GEMCO LATINOAMERICA,
INC., Plaintiff,

v.

SEIKO TIME CORPORATION, Hattori
Seiko Co., Ltd., and Hattori
Corporation of America, Defendants.

No. 86 Civ. 6329 (WK).

United States District Court,
S.D. New York.

Oct. 14, 1987.

James D. Fornari, Jarblum, Solomon & Fornari, P.C., New York City, for plaintiff.

John M. Newell, Whitman & Ransom, New York City, for defendants.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Plaintiff Gemco Latinoamerica ("Gemco"), which served from 1974 to 1986 as the exclusive distributor in Puerto Rico of Seiko brand watches and clocks imported by defendant Seiko Time Corporation ("Seiko Time"), alleges that Seiko Time and its corporate parent Hattori Corporation of America ("Hattori–U.S."), and grandparent, Hattori Seiko Company ("Hattori–Japan") engaged in unfair competition and violated antitrust laws as well as Puerto Rico's Law 75 ("Law 75"), 10 L.P.R.A. § 278 *et seq.*, which protects distributors from wrongful termination of distribution agreements by their suppliers. Defend-ants move to dismiss the Amended Com-plaint on the ground that Gemco's claims are barred by a prior arbitration award, or in the alternative for summary judgment. Finally, again in the alternative, Hattori-Ja-pan seeks a dismissal for lack of personal jurisdiction. Both sides move for sanc-tions.

For the reasons stated below, we dismiss all claims against Seiko Time, but only the breach of contract claims against Hattori–U.S. and Hattori–Japan. We invite further briefing on defendants' motions for alter-native relief, and reserve decision on the requests for sanctions.

## FACTS

Hattori–Japan, a Japanese corporation, markets an array of products, including Seiko brand watches and clocks. It is a trading company, not a manufacturer (Af-firmation of Ronald N. Rutolo ¶ 4). Its subsidiary, Hattori–U.S., functions both as a holding company performing cash management services for its subsidiaries, and as a diversified operating company which sells, services, markets and distrib-utes watches, clocks, optical lenses and consumer electronics (Rutolo Aff. ¶ 5). Seiko Time, a wholly owned subsidiary of Hattori–U.S., purchases Seiko brand watches and clocks from Hattori–Japan. Seiko Time sells these products through distributors in the United States, including Puerto Rico.

For purposes of this motion to dismiss, we must accept as true the factual allega-tions of the Amended Complaint. We here summarize those allegations. Needless to say, we express no view as to the accuracy or reliability of any of them.

On October 13, 1974, Seiko Time appoint-ed plaintiff Gemco as the exclusive distrib-utor of Seiko products in Puerto Rico. The agreement, by its terms, expired on March 31, 1976, but was extended by further writ-ten agreement to March 31, 1978. Al-though no subsequent extensions were exe-cuted, the parties continued their relation-ship.

One of the contractual terms of the relationship was that Gemco would be assigned a yearly quota of Seiko products to sell. Gemco's quota gradually increased, reaching over 140,000 units for 1985. With the defendants' encouragement, Gemco purchased a new building to house a modern computerized distribution center as well as a new computer system specifically designed for the sale of Seiko products. Defendants then allegedly embarked upon a course of conduct designed to take Gemco out of the market.

Beginning in 1980, defendants caused similar quality and grade Seiko products to be shipped into Puerto Rico by other distributors. These parallel imports, also called "gray market" goods, sold at prices lower than the cost of the watches Gemco purchased from Seiko Time and had a dramatic effect on Gemco's sales, reducing the number of its retail accounts from 350 in 1978 to less than 15 in 1985. To compensate for the losses suffered due to the competing gray market goods, Gemco began selling to catalogue showrooms in the mainland United States. Seiko Time objected to these sales because the showrooms discounted suggested retail prices by 20 to 25 percent. In retaliation for defying Seiko Time's prohibition of sales outside of Puerto Rico and to catalogue showrooms, defendants threatened to terminate Gemco as a distributor and used other means—including failing to ship, delaying or cutting back orders—to pressure Gemco into changing its practices.

In 1985, defendants, in conjunction with Seiko distributors, modified their policy concerning catalogue showrooms in a manner allegedly designed to injure Gemco. Seiko Time announced that sales would be authorized to two lucrative showroom accounts which had previously purchased a substantial volume of goods from Gemco. At the same time, the new policy provided that distributors could sell only to catalogue showrooms in their own assigned territories. Since the two showrooms in question had no outlets in Gemco's assigned territory of Puerto Rico, Gemco was precluded from pursuing the market which it had created and serviced.

In early 1985, Seiko Time reduced Gemco's annual quota of watches and clocks from 140,000 units to 50,000 units. At that point, Gemco had already sold 40,000 units, which left only 10,000 units available for the remainder of the year. Due to this restricted supply, Gemco was forced to turn down confirmed purchase orders and decline new accounts. As a further result, Gemco suffered cash flow problems which rendered it unable to pay its debts to Seiko. Defendants have ceased further shipments of products to Gemco and have told Gemco's remaining customers not to purchase any Seiko products from Gemco.

The Amended Complaint does not distinguish between the actions of specific defendants, but refers to them always as a unit. The theory of the Amended Complaint is that "Hattori–Japan, Hattori–U.S. and Seiko [Time] operate as one entity in their dealings with Gemco and in all matters relevant to this action. Hattori–Japan and Hattori–U.S. are responsible for the acts of Seiko [Time]." Amended Complaint ¶ 11.

*Procedural History*

On September 17, 1985, Seiko Time filed a demand for arbitration against Gemco for goods sold and delivered in the amount of $2.85 million. Gemco's answer in the arbitration asserted, upon identical factual allegations, four affirmative defenses and six counterclaims against the present defendants for breach of contract, breach of duty to deal in good faith and violation of Puerto Rico's Law 75. Hattori–U.S. and Hattori–Japan objected to participating in the arbitration on the ground that they were not signatories to the Distribution Agreement between Gemco and Seiko Time. Gemco then moved to compel Hattori–U.S. and Hattori–Japan to join in the arbitration under the theory that Seiko was their alter ego. By Memorandum and Order dated February 26, 1986, we declined to pierce the corporate veil and dismissed Gemco's petition. *In the Matter of the Petition of Gemco Latinoamerica, Inc. for an Order Directing Hattori Seiko, Ltd. and Hattori*

*Corporation of America to Proceed to Arbitration,* 86 Civ. 307 (WK).[1]

The arbitration commenced in February 1986 and concluded in October 1986 after six day-long hearing sessions. Seiko Time's claim occupied only the first session; the remaining hearing days were devoted to Gemco's counterclaims and affirmative defenses. The arbitrators made no factual findings, but substantially awarded Seiko Time all the relief it had demanded, granting it approximately $2.85 million plus interest for goods sold and delivered; and dismissed Gemco's counterclaims on the merits. The award was confirmed by Judge Lasker and judgment upon it was entered, without opposition from Gemco. Seiko Time has since registered the judgment in Puerto Rico and begun execution proceedings.

### The Issues Before the Arbitrators

In its opening brief before the arbitrators (Def. Ex. 8 at pages 1–2), Gemco framed the issues as follows:

This case centers on conduct by Seiko in early 1985, when Seiko abruptly made it impossible for Gemco to operate profitably. In March 1985, Seiko suddenly cut Gemco's quota for the year by almost two-thirds, from 140,000 to 50,000 units, leaving Gemco (which had already ordered and resold a large part of the 140,000 unit quota) unable to meet the needs of its customers for the remainder of the year. This cutback occurred *before,* and was the cause of, Gemco's failure to make a $2.8 million payment to Seiko in July 1985.

The apparent motive for Seiko's 1985 cutback was Gemco's refusal to obey a Seiko policy which Seiko had no right to enforce—a policy prohibiting Gemco, and other Seiko distributors, from selling outside their prescribed territories. We will demonstrate that, in punishing Gemco for violating this policy, Seiko violated

Gemco's statutory and contractual rights.

Gemco argued that the cutback of shipments to Gemco in March–June 1985 without just cause violated both Law 75 and the contract between the parties. *Id.* at 18.

In its post-arbitration Memorandum dated August 25, 1986 (Def. Ex. 10), Seiko Time challenged the applicability of Law 75 because the distribution agreement provided that New York law would govern, and because Seiko Time took no action affecting Gemco's Puerto Rico activity, but only its mainland United States market. Assuming that Law 75 did apply, Seiko Time further contended that its reduction in shipments to Gemco in March 1985 was justified by Gemco's abandonment of the Puerto Rican market for the U.S. catalogue market. Seiko Time also argued that its refusal to ship more merchandise to Gemco in July 1985 was justified by Gemco's default on a $2.6 million debt, as well as Gemco's sale of competing products.

In response to Seiko Time's purported defenses to the counterclaims, Gemco argued in its post-hearing brief, submitted September 8, 1986, (Def. Ex. 9 at page 33) that "the antitrust laws furnish an independent reason for rejecting Seiko's attempt to justify its conduct." Gemco there contended that the testimony of Seiko Time's own witnesses demonstrated that its policy against catalogue account sales was part of a horizontal conspiracy in which Seiko Time acted on behalf of its distributors in enforcing the policy, and that enforcement by refusing to ship goods to Gemco implemented a concerted refusal to deal which is a *per se* violation of the antitrust laws. Even viewed as a vertical restraint, Gemco urged, Seiko Time's policy was unlawful because it constituted a disguised form of resale price maintenance designed to prevent sales to catalogue retailers who would then sell to the public at reduced prices.[2]

---

1. We had accepted that case as related to *Seiko Time Corp. v. Pascual,* 85 Civ. 8030 (WK), yet another proceeding in the tangled web of litigation between these parties.

2. Despite this extensive argument of antitrust questions, Gemco tried to maintain the position that "Gemco's antitrust claims against Seiko and Hattori [were] not before [the] panel." Gemco's post-hearing brief, Def. Ex. 9 at 33.

During the arbitration, Gemco also sought to demonstrate that Hattori–Japan was responsible for the influx of gray market goods into Puerto Rico.

## DISCUSSION

■■ It is undisputed that the arbitration award ("Award") determined adversely to Gemco its counterclaims against Seiko Time for breach of contract and breach of duty of good faith. Accordingly, those claims must be dismissed as against Seiko Time. In addition, the breach of contract claim against Hattori–U.S. and Hattori–Japan must be dismissed for failure to state a claim, since neither of those defendants were signatories to the Distribution Agreement between Seiko Time and Gemco, which is the only contract alleged to have been executed by any of the parties.

Three disputed questions remain: Does the Award preclude litigation of the duty of good faith claim against Hattori–U.S. and Hattori–Japan, who were not parties to the arbitration? 2) Does the Award bar litigation of the Law 75 claims against any party? 3) Does the Award prevent litigation of the antitrust and unfair competition claims against any party?

1. Does the arbitrators' award preclude litigation of the duty of good faith claim against Hattori–U.S. and Hattori–Japan, who were not parties to the arbitration?

■ "Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore* (1979) 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552. The doctrine "precludes raising any claim arising from facts substantially identical to those pled in a prior lawsuit that has been concluded by a final judgment." *Estate of Young v. Williams* (2d Cir.1987) 810 F.2d 363, 365. Since Hattori–U.S. and Hattori–Japan were neither parties to the arbitration nor privies of Seiko Time, the doctrine of res judicata does not apply to them.

■ "Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *Id.* Defensive use of collateral estoppel prevents a plaintiff from asserting against a second defendant a claim the plaintiff has previously litigated and lost against another defendant. *Id.* at 326, n. 4, 99 S.Ct. at 649 n. 4. It is those doctrines that we must consider in dealing with the contentions of Hattori–U.S. and Hattori–Japan that the claims against them should be dismissed.

■ The requirements in New York for collateral estoppel are that: 1) the factual and legal issues in question were necessarily raised and decided in the prior action; 2) such issues are identical to those concerned in the present action, and 3) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding. *Schwartz v. Public Administrator* (1969) 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725; *Ottley v. Sheepshead Nursing Home* (2d Cir.1986) 784 F.2d 62. The identity of the material issues necessarily decided in the previous proceeding is the controlling element. *Ottley, supra,* at 65, *citing Ryan v. New York Telephone Co.* (1984) 62 N.Y.2d 494, 500–01, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487, 490.

■ The gravamen of Gemco's breach of duty claim is that defendants, acting in concert, breached their obligation to utilize Gemco as the exclusive distributor of Seiko products in Puerto Rico by permitting other distributors to sell gray market goods. In the arbitration, Gemco maintained that Hattori–Japan and/or Hattori–U.S. caused the influx of gray market Seiko goods, and that Seiko Time, as a subsidiary, was chargeable with the conduct of its parents. Under Gemco's theory, the duty of good faith claim does not depend upon the existence of a contractual relationship, but can arise simply from a course of dealing. Because the arbitrators made no factual findings, we cannot ascertain whether or not they determined that Hattori–Japan or Hattori–U.S. bore responsibility for the gray market watches entering Puerto Rico.

Hence, to the extent that there may be merit in the assertion that Hattori–U.S. and/or Hattori–Japan had—without necessarily involving Seiko Time—engaged in a course of conduct which gave rise to duties of good faith to Gemco, the breach of good faith claim against them is not barred by the arbitration award.

**2. Does the Award bar litigation of the Law 75 claims against any party?**

a.) Seiko Time

■ Although the Law 75 claims were specifically lodged as counterclaims, and the Award dismissed Gemco's counterclaims on the merits, Gemco now argues that the Law 75 claims were not necessarily determined in the arbitration because Seiko Time maintained that those claims were not subject to arbitration, and because the Award is ambiguous as to whether the arbitrators considered those claims. This contention is so lacking in merit that it deserves no discussion. The Award is perfectly clear in dismissing all of Gemco's counterclaims on the merits, and relitigation is barred under the doctrine of res judicata.

b.) Hattori–U.S. and Hattori–Japan

■ As to Hattori–U.S. and Hattori–Japan, on the other hand, we agree with Gemco that the Law 75 claims may proceed. As we have observed, those defendants were not parties to the arbitration, and res judicata does not apply to them. The doctrine of collateral estoppel also has no force in this situation because the facts relevant to the Law 75 claim against Hattori–U.S. and Hattori–Japan were not necessarily resolved unfavorably to Gemco in the arbitration. Even if Seiko Time's conduct did not violate Law 75, the wholly separate question of whether the other defendants took independent action which may have violated Law 75 could not have been addressed by the arbitrators, who were in no way concerned with the possible liability of parties who were not before them.

Therefore, the Law 75 claims must be dismissed against Seiko Time only.

**3. Does the Award prevent litigation of the antitrust and unfair competition claims against any party?**

*As to Seiko Time*

■ Seiko Time argues that the antitrust and unfair competition claims, although not asserted as counterclaims in the arbitration, are nonetheless barred by the doctrine of res judicata because they arise from the same set of facts as were previously litigated before the arbitrators, and therefore should have been raised at that proceeding. Gemco does not dispute that the antitrust claims constitute a "controversy or claim arising out of or relating to" the Distribution Agreement between Seiko Time and Gemco (Distribution Agreement ¶ 21, Def. Ex. 2), and that the arbitration clause contained therein covers the antitrust claims now asserted. It would seem to follow that under any sensible reading of the arbitration clause, Gemco agreed to and was required to submit the antitrust claims to arbitration. Gemco urges, however, that 1) res judicata does not bar the present action because the arbitrators did not pass upon the antitrust and unfair competition issues, and 2) under the so-called *American Safety* doctrine, Gemco could not be forced to submit its antitrust claims to arbitration.[3] We find neither contention persuasive. With respect to the first argument, the doctrine of res judicata does not require that the claim sought to be precluded was actually litigated in the prior proceeding; that prerequisite applies only to the doctrine of collateral estoppel, which is not in issue here. With respect to the second argument, as discussed below, we conclude that the *American Safety* rule has been eroded by subsequent decisions and is no longer the law of this Circuit.

a.) Res Judicata

■ Under the doctrine of res judicata, a valid judgment on the merits bars a sec-

---

**3.** The Second Circuit has held that unfair competition claims are arbitrable, *Genesco, Inc. v. T. Kakiuchi & Co.* (2d Cir.1987) 815 F.2d 840, 855;

*Necchi Sewing Machine Sales Corp. v. Necchi, S.p.A.* (2d Cir.1966) 369 F.2d 579, and Gemco makes no argument to the contrary.

ond suit based on the same cause of action, *Parklane Hosiery Co. v. Shore, supra,* 439 U.S. at 326 n. 5, 99 S.Ct. at 649 n. 5, and "precludes the parties or their privies from relitigating issues that were *or could have been* raised." *Federated Department Stores, Inc. v. Moitie* (1981) 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (emphasis supplied). Without such a rule, a disappointed litigant could repeatedly litigate the same set of facts, generating a new legal theory for each lawsuit, until it finally found one which prevailed. In order to insure the finality of judgments, the res judicata doctrine requires a plaintiff to assert all of its available legal theories in one proceeding. *See,* 1B *Moore's Federal Practice* ¶ 0.410[1] at 351 (2d ed. 1984).

■ We must therefore determine whether or not the antitrust and unfair competition claims here alleged are the "same causes of action" as were previously asserted in the arbitration. While this determination is not susceptible to any mechanical formula, the crucial factor is "the factual predicate of the several claims asserted. For it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which the litigant relies." *Expert Electric, Inc. v. Levine* (2d Cir.) 554 F.2d 1227, 1234, *cert. denied* (1977) 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190.

The Amended Complaint sets forth three antitrust claims. Claim 5 alleges that "[t]he actions of defendants, in concert with mainland United States distributors, constituted a horizontal agreement to keep Gemco from selling outside Puerto Rico and to catalogue showroom accounts, and to divide markets," (Amended Complaint ¶ 57) in violation of the Sherman Act, 15 U.S.C. § 1 and the Puerto Rico Anti–Monopoly Statute, 10 L.P.R.A. § 257 *et seq.* Claim 6 challenges the territorial restrictions on sales as horizontal restraints and alleges that defendants thereby maintained artificially high resale prices. Claim 7 seeks damages under Puerto Rican Law and the Robinson–Patman Act, 15 U.S.C. § 13a, for price discrimination on the theory that defendants sell to gray market distributors in Puerto Rico at lower prices than to Gemco. The Amended Complaint also seeks injunctive relief on the antitrust claims.

As the briefs submitted in the arbitration proceeding establish, the operative facts underlying Gemco's present antitrust claims are virtually identical to those involved in the arbitration. Seiko Time's claim for goods sold and delivered consumed only a small portion of the arbitration. The principal focus in that proceeding was on Gemco's claim that Seiko Time had wrongfully reduced Gemco's quota in early 1985 in order to punish Gemco for disobeying Seiko Time's allegedly illegal policies prohibiting sales outside the distributor's assigned territory and to catalogue showrooms. Gemco also sought to hold Seiko Time accountable for the alleged flood of gray market goods into Puerto Rico. These same facts are alleged in support of Gemco's position in the instant action. Claim 9 of the Amended Complaint for unfair competition is similarly based upon Seiko Time's entire course of conduct, and is thus factually indistinguishable from the arbitration counterclaims.

Since the factual predicate of the claims asserted in the arbitration and in the instant proceeding are identical, we conclude that they constitute the same cause of action. Therefore, absent an exception to the operation of the res judicata doctrine, the judgment confirming the arbitration award precludes relitigation of the antitrust and unfair competition claims against Seiko Time in this proceeding.

b.) The *American Safety* Rule

■ We now turn to Gemco's contention that it was not required to press its antitrust claims in the arbitration because the so-called *American Safety* doctrine holds that antitrust claims are not arbitrable. If Gemco is correct, then it would be entitled to "split" its claims, *i.e.,* assert its non-antitrust claims in the arbitral forum, and subsequently institute a separate suit on the antitrust claims in federal court. In such a situation, the rule of res judicata would not extinguish its antitrust claims.

*Restatement (Second) of Judgments* § 26(1)(c) (1980).

Nearly twenty years ago, the Court of Appeals for the Second Circuit ruled that "the pervasive public interest in enforcement of the antitrust laws, and the nature of the claims that arise in such cases, combine to make ... antitrust claims ... inappropriate for arbitration." *American Safety Equipment Corp. v. J.P. Maguire & Co.* (2d Cir.1968) 391 F.2d 821. Since that time, the foundations of the *American Safety* doctrine have been significantly eroded, leading both the Supreme Court and the Second Circuit to question whether the rule remains viable. Although the Circuit has yet to consider the continued applicability of *American Safety* in the domestic antitrust context, we conclude that these subsequent developments would lead it, if squarely confronted with the issue as we now are, to abandon its *American Safety* rule.

The Supreme Court has specifically held that nothing in the nature of the federal antitrust laws prohibits parties from agreeing to arbitrate antitrust antitrust claims arising out of international commercial transactions. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.* (1985) 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444. Although the Court left open the question of the validity of agreements to arbitrate domestic antitrust disputes, it "confess[ed] to some skepticism of certain aspects of the *American Safety* doctrine." 473 U.S. at 632, 105 S.Ct. at 3357. The Court observed that the doctrine comprises four ingredients. It first rejected as unjustified the concern that selection of the arbitral forum may be unfair because of "the strong possibility that contracts which generate antitrust disputes may be contracts of adhesion." *Id.* Next, it determined that "potential complexity should not suffice to ward off arbitration." *Id.* at 633, 105 S.Ct. at 3357. In this connection, citing *Coenen v. R.W. Presspich & Co.* (2d Cir.) 453 F.2d 1209, 1215 *cert. denied* (1972) 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 it noted that courts have found acceptable agreements to arbitrate antitrust claims entered into after the dispute arose. Third, it rejected

"the proposition. that an arbitration panel will pose too great a danger of innate hostility to the constraint on business conduct that antitrust law imposes." *Id.* 473 U.S. at 634, 105 S.Ct. at 3358. It then turned to the final justification, which it considered the core of the *American Safety* doctrine: "the fundamental importance to American democratic capitalism of the regime of the antitrust laws." *Id.* It found no reason to assume at the outset of the dispute that international arbitration would not provide an adequate mechanism for resolution. After examining the legislative intent behind § 4 of the Clayton Act, the Court emphasized that the primary function of the treble-damages cause of action was compensatory. "And so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum," the Court concluded, "the statute will continue to serve both its remedial and deterrent function." *Id.* at 637, 105 S.Ct. at 3360; *see also, Shearson/American Express v. McMahon* (1987) —— U.S. ——, 107 S.Ct. 2332, 2344–45, 96 L.Ed.2d 185. Although the holding of *Mitsubishi* was limited to international transactions, we believe that this reasoning would apply with equal force in the domestic context.

Shortly after the *Mitsubishi* decision, the Second Circuit found the reasoning of *American Safety* still sufficiently viable to support a holding that claims brought pursuant to the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1962(c) (1982) ("RICO") are non-arbitrable. *McMahon v. Shearson/American Express, Inc.* (2d Cir.1986) 788 F.2d 94, *rev'd sub nom. Shearson/American Express v. McMahon* (1987), —— U.S. ——, 107 S.Ct. 2332, 96 L.Ed.2d 185. Judge Timbers there found that the public policy concerns inherent in the enforcement of the RICO laws were comparable to the national interest in a competitive economy recognized in *American Safety*; and that, like antitrust claims, RICO claims were particularly unsuited to arbitral resolution. Judge Timbers specifically noted that the reasoning of *American Safety* "was not disputed in *Mitsubishi,* as

applied to agreements to arbitrate arising from domestic transactions." *Id.* at 98. The Supreme Court, in reversing the Second Circuit, disagreed with that assessment, and relied heavily upon *Mitsubishi* to hold that both RICO claims and claims brought under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), are subject to arbitration. This decision continued a trend toward increased recognition of the federal policy favoring arbitration and away from the predicate of the *American Safety* doctrine.

The Second Circuit was presented with the issue now before us in *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.* (2d Cir.1987) 815 F.2d 840. However, in light of the pending appeal in *McMahon,* which had not then been decided, it remanded to the district court with instructions to delay the trial until the Supreme Court had rendered its decision. Now that the Supreme Court has spoken, and the issue squarely presented on this motion can no longer be avoided, we find that none of the justifications for the *American Safety* doctrine retain their vigor and that our Court of Appeals would now hold that domestic antitrust claims are subject to arbitration.

In conclusion, since the antitrust and unfair competition claims now asserted against Seiko Time constitute the same causes of action as were previously asserted by Gemco in the arbitration, and since nothing prevented Gemco from raising those claims before the arbitrators, the doctrine of res judicata requires that those claims be dismissed.

### As to Hattori–U.S. and Hattori–Japan

Since neither Hattori–U.S. nor Hattori–Japan were parties to the arbitration, the Award cannot have any res judicata effect as to them. They contend, however, that Gemco is collaterally estopped from relitigating issues which it previously litigated and lost against Seiko Time merely by switching adversaries. As we stated *supra* at page 976, the doctrine of collateral estoppel precludes relitigation of issues actually decided and necessary to the outcome of the first action. Application of the collateral estoppel doctrine does not require

an identity of parties, but only that the party against whom the doctrine is asserted (here, Gemco) had a full and fair opportunity to litigate the issues in the prior proceeding. Of course, the issues sought to be precluded must be identical.

■ Defendants argue that since the Amended Complaint alleges that Seiko Time, Hattori–U.S. and Hattori–Japan operate as one entity in their dealings with Gemco, the arbitrators' determination as to Seiko's culpability must extend to the other defendants as well. If the Amended Complaint is construed as defendants suggest, the requirements for the application of collateral estoppel would be met, and Gemco would be precluded from relitigating the issue of defendants' conduct. At oral argument, however, Gemco's counsel explained that Hattori–U.S. and Hattori–Japan acted in concert with Seiko Time, but also allegedly acted independently to affect the market for Seiko watches. If the Amended Complaint is read as charging Hattori–U.S. and Hattori–Japan with separate conduct, such independent conduct was not before the arbitrators and could not have been determined by them. Accordingly, to the extent that the Amended Complaint can be read to allege independent conduct on the part of Hattori–U.S. and Hattori–Japan, the antitrust claims against those two defendants may be litigated in the instant lawsuit.

### Defendants' Motions for Alternative Relief

Hattori–Japan moves to dismiss the Amended Complaint for lack of personal jurisdiction. Defendants have submitted affirmations from their officers demonstrating that Hattori–Japan does not maintain, in New York or elsewhere in the United States, any offices, warehouses, telephone listings, or inventory. Title, ownership and risk of loss to the Seiko watches which Hattori–Japan sells to Hattori–U.S. or Seiko Time passes in Japan. Seiko Time and Hattori–U.S. have one common officer; otherwise there is no overlap in personnel. Plaintiff has not offered any affidavits to rebut these facts, but instead argues that

Hattori–Japan is collaterally estopped from relitigating the jurisdictional issue which, Gemco contends, was decided against it by Judge Weinstein in *Bulova Watch Co. v. K. Hattori & Co.* (E.D.N.Y.1981) 508 F.Supp. 1322. Gemco argues, in effect, that *Bulova* establishes a prima facie showing of personal jurisdiction over Hattori–Japan.

In his lengthy and innovative opinion, Judge Weinstein discussed the evolution of Japanese multinational corporations and concluded that at its then stage of development, Hattori–Japan was "monocentric," and that it could not be said that the sales and marketing subsidiaries truly had a life of their own. Focusing on the "integrated international operation of Hattori affecting activities in New York," Judge Weinstein found it appropriate "to look to the center of the wheel in Japan when the spokes violate substantive rights in other countries." *Id.* at 1341. Judge Weinstein observed that, with time, Hattori–Japan might evolve into the later stages of multinational development. *Id.*

The affirmations submitted by Hattori–Japan suggest that precisely the evolution Judge Weinstein thought possible has indeed come to pass: the subsidiaries have developed their own activities, for example, Seiko Time's network of regional distributors, with which the Japanese grandparent has no involvement whatsoever. The doctrine of collateral estoppel is "confined to situations where the ... controlling facts and applicable legal rules remain unchanged." *Commissioner v. Sunnen,* 333 U.S. 591, 600, 68 S.Ct. 715, 720, 92 L.Ed. 898 (1948), and therefore cannot apply in these circumstances.

On the record before us, which is devoid of any facts in support of an assertion of jurisdiction over Hattori–Japan, we would have to conclude that Hattori–Japan does not have sufficient contacts with New York to subject it to personal jurisdiction here. However, considering the possibility that Gemco may have withheld such facts in mistaken reliance on Judge Weinstein's opinion, we think a more prudent course would be to invite submission of a factual affidavit on the point. Any further legal argument should be confined exclusively to the impact of any newly developed facts.

We are similarly inclined to grant defendants' motion to dismiss the trademark (unfair competition) claim on the ground that unauthorized (gray market) sale of genuine goods does not give rise to a cause of action for trademark infringement, *see, Ballet Makers, Inc. v. United States Shoe Corp.* (S.D.N.Y. 1986) 633 F.Supp. 1328. We also tend to agree with defendants that Gemco, which is neither an owner nor licensee of the Seiko mark, has no property right to the mark and therefore no standing to lodge such a claim. *DEP Corp. v. Interstate Cigar Co.* (2d Cir.1980) 622 F.2d 621, 622–23. Again, however, since these points were not addressed during oral argument, we think the wiser course would be to request further briefing of the legal issues involved. On these questions, of course, we seek legal rather than factual argument.

*Sanctions*

Having reviewed the affidavits of all parties on the issue of sanctions, we reserve decision.

In summary, we dismiss all claims against Seiko Time, but only the breach of contract claims against Hattori–U.S. and Hattori–Japan. We invite further submissions on defendants' motions for alternative relief, and reserve decision on the requests for sanctions. Plaintiff shall have until November 4, 1987 to serve and file any additional material, and defendants may respond on or before November 16, 1987. Should plaintiff elect not to file additional materials on or before November 4, 1987, we shall grant defendants' motion to dismiss the unfair competition/trademark claim and Hattori–Japan's motion to dismiss for lack of personal jurisdiction.

SO ORDERED.