**GEMCO LATINOAMERICA, INC., Plaintiff,**

v.

**SEIKO TIME CORPORATION, Hattori Seiko Co., Ltd., and Hattori Corporation of America, Defendants.**

No. 86 Civ. 6329 (WK).

United States District Court, S.D. New York.

May 6, 1988.

James D. Fornari, Jarblum, Solomon & Fornari, P.C., New York City, for plaintiff.

John M. Newell, Whitman & Ransom, New York City, for defendants.

## MEMORANDUM AND ORDER & ORDER OF REFERENCE

WHITMAN KNAPP, District Judge.

Defendants Hattori Seiko Co., Ltd. ("Hattori–Japan") and Hattori Corporation of America ("Hattori–U.S."), hereinafter sometimes collectively referred to as the Hattori defendants, move for partial reconsideration of our order dated October 14, 1987, reported at 671 F.Supp. 972. By that order, we dismissed all claims against defendant Seiko Time Corporation ("Seiko Time"). We also dismissed the breach of contract claims against the Hattori defendants, but let stand the Law 75, duty of good faith and antitrust claims. The Hattori defendants again seek dismissal of the remaining claims on various grounds. We agree that the arguments defendants now bring to our attention "became submerged in the sea of paper that washed in upon the Court with the various motions and cross-motions," (Def. Brief at 1) and therefore grant the motion for reconsideration. Upon reconsideration, we conclude that the antitrust claims may proceed against the Hattori defendants, but that the remaining claims should be dismissed.

### LAW 75 CLAIMS

■ In our prior order, we ruled that the Law 75 claims were not barred by the doctrines of res judicata and collateral estoppel because the arbitrators had no concern with, and did not address, the liability of Hattori–U.S. and Hattori–Japan, who were not parties to the arbitration. Although we adhere to that ruling, we hold that the Law 75 claims must be dismissed for a wholly independent reason: the statute and case law establish that a claim for damages under Law 75 may be brought only against the party who executed the dealer's contract, i.e., Seiko Time.

Law 75, 10 L.P.R.A. § 278 contains the following definitions:

(a) *Dealer:* person actually interested in a dealer's contract because of his having effectively in his charge in Puerto Rico the distribution, agency, concession or representation of a given merchandise or service;

(b) *Dealer's contract:* relationship established between a dealer and a principal or grantor whereby and irrespectively of the manner in which the parties may call, characterize or execute such relationship, the former actually and effectively takes charge of the distribution of a merchandise, or of the rendering of a service, by concession or franchise, on the market of Puerto Rico.

(c) *Principal or grantor:* person who executes a dealer's contract with a dealer.

Section 278b establishes a cause of action for damages solely against a principal.

§ 278b Damages

If no just cause exists for the termination of the dealer's contract for detriment to the established relationship, or for the refusal to renew same, the *principal* shall have executed a tortious act against the dealer and shall indemnify it to the extent of the damages caused him (emphasis supplied).

Confronted with this unambiguous language, courts in Puerto Rico have consistently held that Law 75 claims may proceed only against the principal. *Poultry & Beef of Puerto Rico, Inc. v. Smithfield Packing Co.* (D.P.R.1986) 635 F.Supp. 1070, 1071 ("Law 75 provides a cause of action against ... the one who executed a dealer's contract with the dealer ... all defendants other than the grantor are improper parties to claims under Law 75"); *Romero v. ITE Imperial Corp.* (D.P.R.1971) 332 F.Supp. 523, 525 ("a claim for damages under the Dealer's Act of Puerto Rico can only be directed against the principal or grantor"); *Panamerican Pharmaceutical v. Sherman Laboratories* (D.P.R.1968) 293 F.Supp. 713, 716 (statute limits liability to principal or grantor; complaint fails to state a cause of action against non-party to

dealer's contract).[1]

Applying these definitions and standards to the distribution contract before us, the "dealer" can only be plaintiff Gemco Latinoamerica ("Gemco"), and the "principal or grantor" can only be defendant Seiko Time. The distribution agreement was solely between Gemco and Seiko Time; the other defendants did not sign the written contract. Hence, a cause of action for violation of Law 75 lies, if at all, only against Seiko Time.

Gemco, however, focusing on the definition of "dealer's contract," contends that Hattori–U.S. or Hattori–Japan may also be "principals," depending upon the nature of the "relationship established" between Gemco and the Hattori defendants, "irrespective of the manner in which the parties may call, characterize or execute such relationship." Viewed in context, the language upon which Gemco relies serves merely to include within the reach of the statute those arrangements which function as distributor-supplier relationships but which are never formalized as such through a written contract. It is not intended to extend liability beyond the party who executes the contract to multiple unnamed principals. Our conclusion is fortified by the fact that the Puerto Rico legislature considered and rejected a proposed draft of the law which would have extended liability to "any person helping to make possible the illegal acts." *Romero, supra*, 332 F.Supp. at 525.

For the foregoing reasons, the Law 75 claim is dismissed against Hattori–U.S. and Hattori–Japan.

## DUTY OF GOOD FAITH CLAIMS

■ We previously held that "to the extent that there may be merit in the assertion that Hattori–U.S. and/or Hattori–Japan had—without necessarily involving Seiko Time—engaged in a course of conduct which gave rise to duties of good faith

to Gemco, the breach of good faith claim against them is not barred by the arbitration award." 671 F.Supp. at 977. The Hattori defendants again urge that in the absence of a a contractual relationship between the plaintiff and the party charged, no duty of good faith exists. The only exception to this rule of which we are aware arises when the defendant is alleged to have made misrepresentations during pre-contractual negotiations. *Tommy Muniz v. Copan* (Puerto Rico Sup.Ct.1982) 113 D.P.R. 664. No facts are alleged in support of such a claim in the instant case.

Despite having been afforded a second opportunity to do so, Gemco has failed to cite a single case in support of its theory that the Hattori defendants owed Gemco a duty of good faith. Indeed, plaintiff's memorandum in opposition to the motion for reconsideration (at 7–8) devotes all of two sentences to this claim.

For the same reason [as the Law 75 claims], this Court properly sustained Gemco's "good faith" claims against Hattori–U.S. and Hattori–Japan. Although there was no written distributorship agreement between Gemco and the two Hattoris, the Amended Complaint ... sufficiently allege[s] that there was, in fact, a distributorship relationship, the breach of which gave rise to a claim.

Gemco's inability to produce any relevant authority is consistent with our own failure to find any. We therefore conclude that none exists, and that the good faith claims merely duplicate the faulty logic of the Law 75 claims. Accordingly, the duty of good faith claims against Hattori–U.S. and Hattori–Japan must be dismissed.

## ANTITRUST CLAIMS

■ In our prior order, we dismissed the antitrust claims against Seiko Time under the doctrine of res judicata because we determined that they constituted the same causes of action as were previously assert-

---

**1.** The *Romero* court suggested that a non-signatory who conspired with a grantor to violate Law 75 might be a proper party if the complaint sought injunctive relief. However, as conspiracy itself is not an independent tort, the conspir- ator's liability would depend upon a substantive violation of Law 75 by the grantor. Since the arbitrators found no violation of Law 75 by Seiko Time, that theory has no application here.

ed by Gemco in the arbitration. Since neither of the Hattori defendants were parties to the arbitration, we noted that the award could not have any res judicata effect as to them. They argued, however, that since the Amended Complaint alleges that all defendants operated as one entity in their dealings with Gemco, the arbitrators' determination as to Seiko Time's culpability, or lack thereof, must extend to them as well. In response to this argument, we observed:

> If the Amended Complaint is construed as defendants suggest, the requirements for the application of collateral estoppel would be met, and Gemco would be precluded from relitigating the issue of defendants' conduct. At oral argument, however, Gemco's counsel explained that Hattori–U.S. and Hattori–Japan acted in concert with Seiko Time, but also allegedly acted independently to affect the market for Seiko watches. If the Amended Complaint is read as charging Hattori–U.S. and Hattori–Japan with separate conduct, such independent conduct was not before the arbitrators and could not have been determined by them. Accordingly, to the extent that the Amended Complaint can be read to allege independent conduct on the part of Hattori–U.S. and Hattori–Japan, the antitrust claims against those two defendants may be litigated in the instant lawsuit.

The Hattori defendants contend that the Amended Complaint simply cannot be said to allege independent action on their part, and ask that we reconsider our reading and find the claims barred under the preclusion doctrines.

Upon further reflection, our observation to the effect that, under defendants' unitary conduct reading, collateral estoppel would bar the antitrust claims appears to have been incorrect. Although Gemco litigated the antitrust issues during the course of the arbitration, we cannot say that such issues were necessarily decided against it. Its antitrust argument was directed solely at refuting Seiko Time's contention that disobedience of the policy against sales to catalogue showrooms constituted just cause for the cutback in shipments. But Seiko Time also asserted justifications for such cutback having nothing to do with policies that were claimed to violate the antitrust laws. These independent justifications included Gemco's abandonment of the Puerto Rican market and its sale of competing goods. If the arbitrators found in Seiko Time's favor on either or both of the latter grounds, they would have had no occasion to consider Gemco's antitrust contentions.

■ However, leaving aside the preclusion doctrines, the Amended Complaint nonetheless fails because, on reconsideration, we agree that it cannot fairly be read to allege independent action on the part of the Hattori defendants. Absent such separate action, there is no basis for holding the Hattori defendants liable for the alleged antitrust violations of their subsidiary. In order to hold the parent corporation liable, Gemco must prove that Seiko Time "is a 'mere instrumentality' of [the Hattori defendants] i.e., that [the Hattori defendants] actually dominate [Seiko Time] such that the subsidiary has no existence of its own and that [the parent or grandparent] uses the corporate existence of [Seiko Time] to perpetrate a fraud, resulting in an unjust loss to the [plaintiff]." *Williams v. McAllister Bros., Inc.* (2d Cir.1976) 534 F.2d 19, 21. No facts even remotely suggesting such a relationship have been alleged in this case. Thus, in the absence of a basis for piercing the corporate veil, the parent or grandparent may be held liable only if shown to have acted independently to affect the market for Seiko watches.

■ Gemco, apparently recognizing that our interpretation was overly generous, seeks to counter defendants' challenge by submitting a proposed Second Amended Complaint along with its papers opposing reargument. Thus, the question we must decide is whether Gemco should be held to the theory of the First Amended Complaint, which as we have discussed must fail as a matter of law, or whether a further amendment should be permitted in order to specify independent conduct by the Hattori defendants.

As a general rule, "leave to amend a complaint 'shall be freely given when justice so requires,' Fed.R.Civ.P. 15(a), and if the plaintiff has at least a colorable grounds for relief, justice does so require unless the plaintiff is guilty of undue delay or bad faith or unless permission to amend would unduly prejudice the opposing party." *S.S. Silberblatt, Inc. v. East Harlem Pilot Block* (2d Cir.1979) 608 F.2d 28, 42. Defendants oppose the amendment on the ground that this litigation has already celebrated its second anniversary, and it is too late in the day to be creating new legal theories. Defendants also object on the ground that it is contrary to the evidence presented at the arbitration and in the affidavits filed in connection with the summary judgment portion of the motion.

Gemco's delay, although not entirely excusable, does not cause defendants undue prejudice, in light of the fact that discovery has yet to begin in this action. Turning to the claim that the amendment is contrary to the available evidence, the proposed Second Amended Complaint contains the following new allegations:

(¶ 21) Hattori–Japan has sold Seiko Products to distributors located outside of the United States and Puerto Rico, with the knowledge that such distributors intended to trans-ship the Seiko Products into Puerto Rico for retail sale. Hattori–Japan has sold Seiko Products to Hattori–U.S., even though Hattori–U.S.'s ostensible corporate purpose is to act as a holding company, to enable Hattori–U.S. to sell such Seiko Products in the United States and Puerto Rico, outside of the distributorships established by Seiko Time in the United States and Puerto Rico. Upon information and belief, Hattori–U.S. has sold Seiko Products to distributors, other than Seiko Time distributors, in the United States and Puerto Rico, for resale in Puerto Rico.

(¶ 28) In November 1983, Robert Pliskin, an officer of Seiko Time, announced at a meeting of Seiko Time distributors held at the Helmsley Palace in New York that Seiko Time would allow sales by Gemco and other distributors to catalogue showrooms. However, at the same meeting, Hideaki Moriya, an officer of Hattori–Japan who held no position with Seiko Time, announced that Hattori–Japan would not allow such sales.

(¶ 29) Gemco was thus not allowed to sell to catalogue showrooms, because of a decision made by Hattori–Japan, independently of Seiko Time.

With respect to Paragraph 21, Chushichi Inoue, director of Hattori–Japan, states in his affidavit,

[Hattori–Japan] sells SEIKO brand watches and clocks to [Seiko Time] and/or [Hattori–U.S.] ... Emphatically, [Hattori–Japan] does *not* sell SEIKO brand watches and clocks to *any* other buyer in the United States or Puerto Rico for resale in those markets. [Hattori–Japan] has *never* shipped SEIKO brand watches and clocks to Puerto Rico (emphasis in original).

Defendants contend that since Gemco failed to submit evidence to contradict Inoue's affidavit, summary judgment should have been granted in their favor. Hence, they argue, no amendment would be necessary. Gemco does not quibble with Inoue's assertion; its claim is that Hattori–Japan sold Seiko products to distributors outside the United States and Puerto Rico, knowing that those distributors intended to sell the products on the gray market in Puerto Rico. As Gemco correctly points out, Inoue nowhere denies that claim. Furthermore, as there has been no discovery of Hattori–Japan in this action, Gemco could not be expected to produce evidence of Hattori–Japan's role in promoting the gray market in Puerto Rico, as that information is within defendants' sole knowledge. Accordingly, the amendment should be permitted.

With respect to Paragraphs 28 and 29, while there is some merit to defendants' protest that they are being made to shoot at a moving target,[2] since we have already

---

**2.** In support of their motions for summary judgment, Seiko Time and Hattori–U.S. each submitted an affidavit of one of their officers outlining their corporate structure and indepen-

concluded that Gemco should be permitted to amend its pleading in other respects, it makes little sense to allow certain facts to be added but preclude others.

Accordingly, the proposed Second Amended Complaint will be allowed in its entirety. Needless to say, we express no view as to the merits of the new allegations.

In summary, the motion for reconsideration is granted and, upon reconsideration, we adhere to our ruling sustaining the antitrust claims against Hattori–U.S. and Hattori–Japan, but dismiss the Law 75 and duty of good faith claims against these defendants. In addition, we grant Gemco's motion for leave to file the proposed Second Amended Complaint alleging independent conduct by Hattori–U.S. and Hattori–Japan.

Our original order directed Gemco to submit additional materials demonstrating that Hattori–Japan has sufficient contacts with New York to subject it to personal jurisdiction.[3] That submission was held in abeyance pending our decision of the motion to reargue. Hattori–Japan's motion to dismiss for lack of personal jurisdiction is hereby referred to Magistrate Barbara A. Lee to hear and report. The Magistrate may allow such discovery directed to the issue before her as she deems appropriate.

SO ORDERED.

dence from the other defendant corporations. Gemco must have been aware of the meeting it alleges took place in 1983, yet submitted no affidavit attesting to the conduct of Mr. Moriya. Instead, plaintiff waited until defendants moved to reargue the summary judgment motion, and belatedly sought to amend its complaint, again relieving itself of the obligation to set forth, by affidavit, specific facts showing that there is a genuine issue of material fact.

3. We also invited further submission on the trademark (unfair competition) claim. That cause of action has subsequently been dismissed on consent.