## SYSCOMM INTERNATIONAL CORPORATION, Plaintiff,

v.

## SYNOPTICS COMMUNICATIONS, INC., Anixter, Inc. and Westcon, Inc., Defendants.

### No. CV 94–2025.

United States District Court, E.D. New York.

June 28, 1994.

Blodnick, Abramowitz & Blodnick by Edward K. Blodnick, Roslyn Heights, NY, for plaintiff.

Shearman & Sterling, William J.F. Roll, III, New York City, for defendant SynOptics.

Wilson, Elser, Moskowitz, Edelman & Dicker by Fred N. Knopf, New York City for defendant Westcon, Inc.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Syscomm International Corporation ("Syscomm") brings this action against defendants SynOptics Communications, Inc. ("SynOptics"), Anixter, Inc. ("Anixter") and Westcon, Inc. ("Westcon") for violations of the antitrust laws. Upon commencing this action, Syscomm requested a stay of a certain ongoing arbitration proceeding between Syscomm's assignees and SynOptics. SynOptics opposes the motion and requests that this Court compel arbitration of the antitrust claims against it. For the reasons below, Syscomm's motion for a stay is denied, and SynOptics' request to compel arbitration is granted.

## I. BACKGROUND

As alleged in the complaint, Syscomm, through a former wholly-owned subsidiary Romel Technology, Inc. ("Romel"),[1] was a wholesale distributor of computer products. SynOptics is a manufacturer of computer networking products. Anixter and Westcon sell, install and service computer network systems and related products, and are non-exclusive distributors of SynOptics' products.

On or about June 11, 1991, Romel and SynOptics entered into a distributor agreement, whereby Romel was appointed a non-exclusive authorized distributor of designated

---

1. Romel did business as Management Systems Group, which was formerly known as Information Technology Distributors, Inc.

SynOptics' products (the "Agreement"). The Agreement was for a one year term, to renew automatically for a successive one-year period unless terminated by mutual agreement of the parties or in accordance with the terms of the Agreement.

By letter dated November 3, 1993, SynOptics purported to cancel the Agreement effective February 3, 1994 (the "November 3 Termination Notice"). As of November 4, 1993, Romel's sales of SynOptic's products was about $12 million.

On November 15, 1993, by a Demand for Arbitration (the "Demand"), Romel commenced an arbitration proceeding against SynOptics under the auspices of the American Arbitration Association in San Francisco, California, pursuant to an arbitration clause in the Agreement,[2] for "breaches of contract, bad faith termination of the contract, breach of duty of good faith, failure to honor commitment to pay soft dollars, unfair competition, predatory and anti-competitive conduct...." (the "Arbitration Proceeding").

On or about December 31, 1993, Romel amended its arbitration claim to specify that it sought damages of not less than $1,240,095; the original Demand indicated "Claim or Relief Sought: Total monetary damages are unknown at this time." Affidavit of Edward K. Blodnick ("Blodnick Aff.") ¶¶ 5–6. In addition, Syscomm agreed to limit its claim against SynOptics to three areas: (1) failure of SynOptics to pay Syscomm certain "soft dollars" earned prior to termination; (2) damages relating to delivery of product to Syscomm in a timely fashion; and (3) inequitable conduct by SynOptics toward Syscomm including, but not limited to, disclosure of Syscomm's customer lists to other distributors, preferential pricing, training and seminars, for which Syscomm sought reinstatement. Blodnick Aff. ¶ 7.

In the meantime in December 1993, CMS Enhancements, Inc. and CDS Distribution, Inc. (collectively, "CDS") entered into a plan and agreement of merger with Syscomm for Syscomm's wholly-owned subsidiary Romel for certain consideration, including shares of CDS common stock. As Syscomm's President explains further in an affidavit in support of the motion for a stay, as a result of the termination, 100,000 shares of CDS common stock, part of the consideration for the merger, were placed in escrow, conditioned on Syscomm obtaining a reinstatement of the Agreement between Romel and SynOptics. Affidavit of John Spielberger ("Spielberger Aff.") ¶ 5. Subsequently, CDS, as successor to Romel, assigned to Syscomm all of Romel's right, title and interest in any and all claims, including antitrust claims, against SynOptics, Anixter and Westcon.

Prior to the commencement of this action, the parties exchanged some 6000 pages of documents in the course of the Arbitration Proceeding and completed some four full or partial weeks of hearings, which included 15 days of testimony. In the meantime, by an order dated February 1, 1994, the arbitrator denied a motion by Romel for a preliminary injunction preventing SynOptics, pending the resolution of the Arbitration, from terminating the Agreement on February 3, 1994, pursuant to the November 3 Termination Notice.

Spielberger states that in testimony during the course of the Arbitration Proceeding, Larry Goodwin ("Goodwin"), formerly Vice President for North America for SynOptics, acknowledged discriminatory practices by SynOptics favoring Anixter and Westcon in regard to certain "key seller programs" and special pricing, purportedly clear violations of the antitrust laws. Spielberger Aff. ¶ 9. Spielberger claims that up until that point, Syscomm suspected that SynOptics may have been violating the antitrust laws by certain

---

**2.** The arbitration clause provides:

K.9 Arbitration. Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration at the office of the American Arbitration Association ("AAA") in Santa Clara or San Francisco County in accordance with the rules of the AAA and judgment upon the award rendered may be entered in any court having jurisdiction. The arbitrator shall not have the authority to change or revise any decisions made by SynOptics where, by the terms of this Agreement SynOptics has been given sole discretion. In the event a dispute is submitted to arbitration, the arbitrator may award costs and reasonable attorney's fees to the prevailing party.

discriminatory conduct, "but never had any hardcore proof" until Goodwin's testimony. *Id.* ¶ 9. Based upon these activities discovered in the Arbitration Proceeding, Syscomm commenced the present action for antitrust violations.

Upon commencing this action, Syscomm requested a stay of the Arbitration Proceeding. Syscomm contends that it will be prejudiced if it is not permitted to pursue its antitrust claims in this action first, and, in any event, Syscomm may not pursue antitrust claims in arbitration as it violates public policy. Moreover, Syscomm contends that it has no agreement to arbitrate antitrust claims with Anixter and Westcon, and it should have the opportunity to pursue its antitrust claims in one forum, this Court, against all defendants.

In a conference call with the Court on June 17, 1994, Syscomm's and SynOptics' attorneys agreed that the language of the arbitration clause in the Agreement encompassed Syscomm's antitrust claims against SynOptics. As a result, the attorneys further agreed that it was unnecessary for SynOptics to bring a formal motion to compel arbitration of these claims and SynOptics' opposition to the stay motion would be treated as a motion to compel arbitration of the antitrust claims against it. Both parties confirmed this understanding in letters to the Court that same day.

## II. *DISCUSSION*

■ Because Syscomm and SynOptics agree that the arbitration clause applies to Syscomm's antitrust claims against SynOptics, the issue presented is whether antitrust claims arising from domestic transactions are arbitrable where the parties have agreed to arbitrate them. While, at one time, the answer to this question in the Second Circuit would have been that such claims are nonarbitrable, *see American Safety Equipment Corp. v. J.P. Maguire & Co.,* 391 F.2d 821 (2d Cir.1968), this Court believes that the Second Circuit and the Supreme Court, if faced with this issue, would conclude that antitrust claims arising from domestic transactions are arbitrable.

Syscomm argues that the Second Circuit's decision in *American Safety, supra,* which held that domestic antitrust claims are nonarbitrable, controls the decision in this case. SynOptics, on the other hand, argues that the *American Safety* doctrine has been implicitly overruled by recent Supreme Court decisions upholding the enforceability of agreements to arbitrate international antitrust disputes, *see Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), and agreements to arbitrate domestic securities law claims and RICO claims, *see Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (holding that claims under the Securities Act of 1933 are arbitrable); *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (holding that claims under the Securities Act of 1934 and RICO claims are arbitrable). Because this Court agrees that the Second Circuit would no longer adhere to the *American Safety* doctrine, this Court grants SynOptics' request to compel arbitration and denies Syscomm's request for a stay of the pending Arbitration Proceeding.

In *Mitsubishi,* the Supreme Court upheld the enforceability of an agreement to resolve antitrust claims by arbitration when the agreement arises from an international commercial transaction. Although the *Mitsubishi* court found it "unnecessary to assess the legitimacy of the *American Safety* doctrine as applied to agreements to arbitrate arising from domestic transactions," it "confess[ed] to some skepticism of certain aspects of the *American Safety* doctrine." *Mitsubishi,* 473 U.S. at 629, 632, 105 S.Ct. at 3355, 3356. Upon identifying four ingredients or concerns of the *American Safety* doctrine, *id.* at 632, 105 S.Ct. at 3356–57, the Court first rejected as unjustified the concern that there is a "strong possibility that contracts which generate antitrust disputes may be contracts of adhesion." *Id.* Rather, the Court observed that a party resisting arbitration may attack directly the validity of the agreement or make a showing that would warrant setting aside the forum-selection clause. *Id.* The Court then determined that the "potential complexity [of antitrust issues] should

not suffice to ward off arbitration," thereby rejecting the concern that antitrust issues are "ill-adapted to the arbitral process." In this respect the Court noted, in particular, that "adaptability and access to expertise are hallmarks of arbitration," and that "even the courts following *American Safety* ... have agreed that an undertaking to arbitrate antitrust claims entered into *after* the dispute arises is acceptable." *Id.* at 633, 105 S.Ct. at 3357 (emphasis in original). Next, the Court rejected, as another concern of the *American Safety* doctrine, the "proposition that an arbitration panel will pose too great a danger of innate hostility to the constraints on business conduct that antitrust law imposes." *Id.* at 634, 105 S.Ct. at 3357. Lastly, the Court addressed the ingredient it considered the "core of the *American Safety* doctrine—the fundamental importance to American democratic capitalism of the regime of the antitrust laws." *Id.* After noting that the private cause of action, designed to afford compensation to injured competitors and to pose a deterrent to potential violators, plays a central role in enforcing this regime, and finding no reason to assume at the outset of the dispute that international arbitration will not provide an adequate mechanism, the Court concluded that "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will. continue to serve both its remedial and deterrent function." *Id.* at 636–37, 105 S.Ct. at 3359. Thus, the Court found none of the four ingredients or concerns of the *American Safety* doctrine justified denying enforcement of an agreement to arbitrate antitrust claims arising from an international commercial transaction.

Syscomm contends that the *American Safety* doctrine is "still good law and has not been overturned by the United States Supreme Court or any other decision." In support of its position, Syscomm relies on *Stendig International, Inc. v. B. & B. Italia, S.p.A.*, 633 F.Supp. 27 (S.D.N.Y.1986), a 1986 district court decision, which held that because *Mitsubishi* did not overrule *American Safety*, *American Safety* was still binding on the court. The *Stendig* court therefore refused to compel arbitration of an antitrust claim arising from a domestic transaction.

*See id.* at 28. However, *Stendig* was decided prior to the Supreme Court's decisions in *Rodriguez de Quijas* and *McMahon*, and more recent lower court cases have held that *American Safety* would no longer be followed by the Second Circuit, *see, e.g., Hough v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 757 F.Supp. 283, 286 (S.D.N.Y.), *aff'd without opinion*, 946 F.2d 883 (2d Cir.1991); *Gemco Latinoamerica, Inc. v. Seiko Time Corp.*, 671 F.Supp. 972, 978–80 (S.D.N.Y. 1987), *adhered to in part and dismissed in part on reconsideration*, 685 F.Supp. 400 (S.D.N.Y.1988); *see also GKG Caribe, Inc. v. Nokia–Mobira, Inc.*, 725 F.Supp. 109, 111–13 (D.P.R.1989) (concluding that the Supreme Court "would most certainly discard [the *American Safety* ] doctrine").

Plaintiff also relies on a 1987 Second Circuit decision in *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir.1987), which Plaintiff misconstrues. Plaintiff contends that in *Genesco* the Second Circuit "ruled that agreements containing arbitration clauses involving international commerce permitted antitrust claims to be arbitrated while domestic commerce antitrust claims despite having broad arbitration clauses in their agreements was [sic] not arbitrable." Plaintiff's Reply Memorandum of Law, at 3. The Second Circuit held no such thing. Contrary to Syscomm's contention, the Second Circuit, although presented with the issue, did not *rule* in *Genesco* that domestic antitrust claims are not arbitrable. Rather, the Second Circuit recognized that the Supreme Court in *McMahon* would "decide the continued applicability of the *American Safety* doctrine to domestic commercial transactions," and remanded the issue to the district court with the suggestion that the district court not go forward with trial until the Supreme Court decided *McMahon. Genesco*, 815 F.2d at 854. Indeed, a more recent Second Circuit decision than *Genesco* is indicative of the continued expansion of the types of federal statutory claims that may be arbitrated. *See Bird v. Shearson Lehman/American Express, Inc.*, 926 F.2d 116, 118–22 (2d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2891, 115 L.Ed.2d 1056 (1991). In *Bird*, the Second Circuit held that an agreement to arbi-

trate statutory ERISA claims is enforceable. *Id.* at 118–22.

While *American Safety* has not been explicitly overruled, this Court believes that in light of the federal policy favoring arbitration agreements that has fueled the expansion of the types of federal statutory claims that may be arbitrated, the Second Circuit would now hold that the principle of *Mitsubishi* is not limited to antitrust claims arising in international transactions, and that domestic antitrust claims are arbitrable. *See Hough,* 757 F.Supp. at 286; *see also Gemco,* 671 F.Supp. at 980 ("[W]e find that none of the justifications for the *American Safety* doctrine retain their vigor and that our Court of Appeals would now hold that domestic antitrust claims are subject to arbitration."); *cf. Bird,* 926 F.2d at 118–22 (agreement to arbitrate statutory ERISA claims held enforceable).

Because Syscomm's antitrust claims fall within the Agreement's arbitration clause, and because those claims are arbitrable, SynOptics' request to compel arbitration is granted and Syscomm's motion for a stay of the pending Arbitration Proceeding is denied. Consequently, Syscomm must submit its antitrust claims against SynOptics to arbitration in accordance with the Agreement.[3]

Syscomm's claim of prejudice if it is not permitted to pursue its antitrust claims in this action first is unavailing as a basis for refusing to compel arbitration and denying a stay of this action. *See Seguros Banvenez, S.A. v. S/S Oliver Drescher,* 761 F.2d 855, 862 (2d Cir.1985). In rejecting a district court's view that section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, grants a federal court plenary discretion over the proceedings, the Second Circuit cautioned in *Seguros Banvenez:*

> Contrary to the [district] court's view, that section does not grant a court plenary discretion over the proceedings. Rather, "in passing on a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." The court may not refuse to grant a stay under section 3 based on considerations of judicial economy.

*Seguros Banvenez,* 761 F.2d at 862 (quoting *Prima Paint v. Flood & Conklin,* 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967)). In addition, the fact that Syscomm does not have agreements with Anixter or Westcon to arbitrate antitrust claims between them does not justify denying the motion to compel or require one trial in this court, rather than sending only one of the three defendants, *i.e.,* SynOptics, to arbitration. *See Seguros Banvenez,* 761 F.2d at 862; *see, e.g., Steinberg & Lyman v. Takacs,* 774 F.Supp. 885, 888 (S.D.N.Y.1991) (holding that plaintiff's claim that notions of judicial economy favored court trying action at one time, rather than sending only two out of a number of defendants to arbitration, does not withstand mandate of 9 U.S.C. § 3).[4]

### CONCLUSION

For the reasons above, plaintiff Syscomm's motion for a stay of a certain pending arbitration proceeding is denied, and defendant SynOptics' request to compel arbitration is granted. Based on this determination, this action is stayed as against SynOptics pending arbitration.

SO ORDERED.

---

**3.** Syscomm also requested a stay of the Arbitration Proceeding in the event this Court determined that its antitrust claims are nonarbitrable. Based on the determination that Syscomm's antitrust claims are arbitrable, this Court need not reach this issue.

**4.** As neither Anixter nor Westcon has answered or moved in response to the complaint as of this date, this Order does not stay this action as against them.