### GEMCO LATINOAMERICA, INC., Plaintiff,

v.

### SEIKO TIME CORPORATION, Defendant, Appellee.

### Royal Bank of Canada, Appellant.

### GEMCO LATINOAMERICA, INC., Plaintiff,

v.

### SEIKO TIME CORPORATION, Defendant, Appellant.

### Royal Bank of Canada, Appellee.

### Nos. 94–1186, 94–1671.

United States Court of Appeals, First Circuit.

Heard Nov. 9, 1994.

Decided Aug. 2, 1995.

Mildred Caban with whom Jorge Souss and Goldman Antonetti & Cordova, Hato Rey, PR, were on brief, for Royal Bank of Canada.

John M. Newell with whom John E. Tardera, Richard A. Levine, Whitman Breed Abbott & Morgan, New York City, Rafael Perez–Bachs, Vivian Nunez and McConnell Valdes, Hato Rey, PR, were on brief, for Seiko Time Corp.

Before BOUDIN, Circuit Judge, CAMPBELL, Senior Circuit Judge, and BOYLE,* Senior District Judge.

BOUDIN, Circuit Judge.

Royal Bank of Canada ("Royal Bank") appeals from an order of the district court finding it in civil contempt for violating an attachment order and assessing damages of $1.63 million plus attorney's fees and costs. The district court found that Royal Bank had assisted in frustrating the application of an attachment order to assets that Royal Bank claimed for its own. Because Royal Bank was not a party to the underlying execution proceedings, the contempt order is considered a final decision appealable by Royal Bank under 28 U.S.C. § 1291. *Appeal of Licht & Semonoff,* 796 F.2d 564, 568 (1st Cir.1986).

* Of the District of Rhode Island, sitting by designation.

## I.

The attachment order at issue here was entered on January 13, 1987, to execute a New York judgment for Seiko Time Corporation ("Seiko") against Gemco Latinoamérica, Inc. ("Gemco") in the amount of $3.16 million plus interest. Earlier Gemco had been the exclusive distributor for Seiko watches and clocks in Puerto Rico. Initially Gemco was wholly owned and operated by José and Carmen Pascual, as was a related company, the Watch and Gem Palace, Inc. ("Watch and Gem"); later José Pascual ("Pascual") became the sole owner. Gemco served as a wholesale distributor for jewelry and time pieces, while Watch and Gem operated two retail stores specializing in jewelry and time pieces (the Plaza Las Americas store and the Old San Juan Store).

Beginning in 1981, Royal Bank began extending credit to Gemco secured by a factor's lien on Gemco's inventory and accounts receivable under Puerto Rico's Factor's Lien Act, 10 L.P.R.A. §§ 551 *et seq.* Gemco thereafter transferred most of the funds it borrowed from Royal Bank to Watch and Gem in order to finance Watch and Gem's retail operations; these transfers were recorded in Watch and Gem's books as intercompany accounts payable and in Gemco's books as intercompany accounts receivable. By early 1986 Royal Bank had extended credit to Gemco which exceeded $1.4 million, and Gemco's books showed an account receivable due from Watch and Gem of $2.15 million.

In March 1986, Royal Bank sought to restructure and resecure Gemco's debt, as well as a much smaller debt then owed to the bank by Watch and Gem. To this end, Royal Bank obtained new factor's liens from both Gemco and Watch and Gem, assignments of Gemco's and Watch and Gem's accounts receivable including all "intercompany receivables," cross-guaranties from Gemco, Watch and Gem and the Pascuals, and mortgages on various properties owned by the Pascuals. The amount owing to the bank from Gemco at the time of restructuring was $1.25 million,

while Watch and Gem owed the bank just $125,000.

In October 1986, Seiko obtained a $2.85 million arbitration award against Gemco in New York, stemming from Gemco's failure to pay for goods that Seiko had provided to Gemco. The award was confirmed by the district of New York on November 4, 1986, and judgment was entered for Seiko on November 12, 1986, for $3,167,946.49. The New York judgment was registered in the district court in Puerto Rico on December 16, 1986, and on January 13, 1987, that court issued an attachment order and accompanying writ of execution to satisfy Seiko's $3.16 million judgment against Gemco. The order attached the following assets of Gemco:

1) All debts and accounts receivable belonging to Gemco, including those owing from The Watch and Gem Palace, Inc. and Timekeepers, Inc.

2) The bank accounts in the name of Gemco in the Royal Bank of Canada (Current Account No. 132–420–1) and the Plaza Scotia Bank (Current Account No. 006–1919–14).

3) Merchandise inventory consisting of Seiko watches and clocks and Colirbrí brand lighters, located at the fourth floor of the building at 204 San José Street, Old San Juan, Puerto Rico.

4) An IBM System 36 Computer with peripheral equipment located at the second floor of the building at 204 San José, Street, Old San Juan.

The order also instructed Gemco's various debtors to remit any amounts owed to Gemco into court:

The Marshal shall also be instructed to notify the present order to The Watch and Gem Palace, Inc.; Timekeepers, Inc.; The Royal Bank of Canada, and the Plaza Scotiabank, and to instruct said parties to refrain, upon penalty of contempt, from making any other payments to Gemco by concept of monies owed from any of the attached debts, accounts receivable or bank accounts. The Marshal shall collect any amounts belonging to Gemco presently deposited in any of the aforementioned bank accounts. Any other amounts owed to Gemco by any of the aforementioned under any of the attached debts, accounts receivable or bank accounts shall be henceforth remitted to this Court ..., where in due course, it shall be claimed by Seiko Time Corporation.

At the time of execution, Gemco's primary asset was the account receivable arising from the various intercompany loans it had made to Watch and Gem over the years; the account then stood at around $2 million. Also at the time of execution, Gemco still owed Royal Bank around $1.05 million, while Watch and Gem owed the bank nothing.

Royal Bank was served with a copy of the order of attachment on January 20, 1987. The very next day the bank obtained from Pascual an assignment of any proceeds derived from the contemplated sale of Watch and Gem's Plazas Las Americas store, purportedly as further security for Watch and Gem's guaranty of Gemco's debt. On April 27, 1987, Watch and Gem sold its Plazas Las Americas store for $850,000. By agreement, the purchase price was disbursed directly to Royal Bank—minus back rent due Watch and Gem's landlord.

Of the $850,000 purchase price, Royal Bank received $797,219.73, which was fully credited against Gemco's indebtedness, ostensibly under Watch and Gem's March 1986 guaranty. This reduced Gemco's total debt to Royal Bank to $300,357.71 as of June 30, 1987. On that day, Watch and Gem then assumed the balance of Gemco's indebtedness by taking a $300,357.71 loan from Royal Bank. According to Royal Bank, this loan simply erased Gemco's debt and created an equivalent debt in Watch and Gem's name; Watch and Gem never received any money.

At the same time, Royal Bank also extended a line of credit to Watch and Gem for "working capital". Through December 1987, Watch and Gem borrowed a total of $200,000 from the bank. Watch and Gem used the proceeds from this new loan to pay off Gemco's creditors other than Seiko, in order to maintain Gemco as a viable entity so that it could continue a New York lawsuit that Gem-

co had brought against Seiko.[1] During this time, Royal Bank also made some direct payments to Watch and Gem's creditor. At no point did Watch and Gem pay into court the amount originally owing on the intercompany debt.

Seiko eventually learned of Watch and Gem's payments to Gemco's other creditors and Watch and Gem's satisfaction of Gemco's debt to Royal Bank. On July 10, 1987, Seiko moved for a finding of contempt against Gemco, Watch and Gem and the Pascuals. After a hearing, the Puerto Rico district court on January 21, 1988, held Gemco, Watch and Gem and the Pascuals in contempt for violating the attachment order and diverting Gemco assets away from Seiko. On March 18, 1988, Seiko filed a motion for contempt against Royal Bank and request for damages.

Shortly thereafter, on March 22, 1988, Pascual moved for court permission to sell the inventory from Watch and Gem's Old San Juan store in order "to apply the proceeds to the indebtedness [Watch and Gem] owes to the Royal Bank of Canada." In late June, before any sale took place, Royal Bank seized the inventory of the Old San Juan store— purportedly acting under an order issued by a local court—to protect its collateral for the loans it had extended to Watch and Gem starting in June 1987. Royal Bank's seizure occurred shortly before its show cause hearing in the district court on the contempt charge, which took place on July 15, 1988.

On January 27, 1994, the district court issued an 18–page order finding Royal Bank in contempt. The court found that Royal Bank had aided and abetted a violation of the January 13, 1987, attachment order by utilizing Watch and Gem funds to repay Gemco's debts instead of paying that money into court. The district court then assessed damages against Royal Bank, reasoning that if not improperly diverted, the funds would have eventually gone to Seiko. The court calculated damages to be $1.63 million (plus attorney's fees and costs later fixed at $64,-954.25) as follows:

1. $797,219.73 from the sale of Watch and Gem's Plazas Las Americas store, the proceeds of which were paid directly to Royal Bank;

2. $52,780.27 that Royal Bank directed to the landlord for Watch and Gem's Plazas Las Americas store;

3. $250,000 that had constituted a "loan" to Watch and Gem from Royal Bank, which Watch and Gem had used to pay Gemco's third-party creditors and which Royal Bank had used to pay Watch and Gem's creditors directly;

4. $530,000 from Royal Bank's seizure of inventory from Watch and Gem's Old San Juan store, which blocked the sale of the store to a willing buyer for the purchase price of that amount.

### II.

In reviewing a district court's contempt order, we accept the district court's factual findings and reasonable inferences if not clearly erroneous. *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 15–16 (1st Cir.1991). A civil contempt must be established by clear and convincing evidence and the underlying order must be clear and unambiguous in its terms. *Id.* at 16. A nonparty, although not directly bound by the order, may be held in civil contempt if it knowingly aids or abets a party in violating the court order. *G. & C. Merriam Co. v. Webster Dictionary Co., Inc.*, 639 F.2d 29, 34–35 (1st Cir.1980).

On appeal, Royal Bank argues that the payments from Watch and Gem to Royal Bank did not violate the specific terms of the order, and even if they did, Royal Bank says that it did not aid or abet the violation. Alternatively, Royal Bank argues that it had a superior claim to seize the Gemco and Watch and Gem assets in question despite Seiko's attachment. We will address each of these issues, and one other, in turn.

1. By its terms the January 13, 1987, order attached "[a]ll debts and accounts receivable belonging to Gemco ... owing from [Watch and Gem]" and directed that apart from Gemco bank accounts (which the mar-

---

1. This litigation by Gemco was ultimately unsuccessful. *See Gemco Latinoamerica, Inc. v. Seiko Time Corp.*, 671 F.Supp. 972 (S.D.N.Y.1987), 685 F.Supp. 400 (S.D.N.Y.1988).

shal was to collect), "[a]ny other amounts owed to Gemco by [Watch and Gem] ... shall be henceforth remitted to this Court...." We think that a reasonably straightforward reading of this order required Watch and Gem to pay over to the district court the amount that Watch and Gem then owed to Gemco, which was well over $1 million.

Instead, there followed a series of payments to recipients other than the court—primarily by Watch and Gem, or out of its assets—to the advantage of Royal Bank. The first and largest of these payments was the diversion of proceeds from the sale of Watch and Gem's Plazas Las Americas store; the bank received $797,219.73, which it used to reduce Gemco's outstanding debt to the bank, and by pre-arrangement over $50,000 went to Gemco's landlord. This transaction occurred in April 1987, well after the bank had been notified of the attachment order.

Although the bank has filed a 45–page brief, it is not easy to discern from that document precisely why the bank thinks that these payments were consistent with the "henceforth remitted" directive in the court's order. The brief explains why the bank cannot be deemed to have violated *other* provisions of the order but it largely ignores the provision directing Watch and Gem to pay what it owed to Gemco directly to the court, a provision stressed in the district court's contempt order. Queen Victoria's famous phrase, "We are not amused," is remarkably apt.

■ The bank does argue that Watch and Gem's payment to the bank was made to discharge Watch and Gem's own allegedly legitimate guaranty of Gemco's obligations to the bank. But paying the bank instead of the court, when there is not enough money for both, still violates the attachment order. The bank says that the attachment order did not forbid Watch and Gem from paying its own debts, but an $800,000 payment of another debt patently frustrated the clear intent of the order that Watch and Gem's money be held for Seiko. *Cf. General Motors Acceptance Corp. v. Superior Court,* 85 P.R.R. 314, 319 (1962) ("[garnished] funds are symbolically in the custody of the law").

■ Similarly, we reject the bank's contention, offered as a defense to the charge of contempt, that its claims against Watch and Gem assets had priority. As the district court correctly explained:

> Watch & Gem was ordered to remit to the Court the amount owed GEMCO, for the ultimate benefit of SEIKO TIME. The court did not limit or restrict its Order to the payment of funds which were free of third-party claims; rather, the Court ordered that such funds were to be paid into Court so that the Court could then resolve any question of priorities.

If Watch and Gem's assets were subject to claims prior to the attachment order, the proper course was to pay the money into court and then litigate the matter or, possibly, to ask the district court to modify its attachment. *See* 32 L.P.R.A.App. III, R. 21.5 (right to intervene of third parties claiming property attached by order of the court); R. 21.6 (motion to release property). But self-help, in the teeth of the court's order, was not permissible. *See Matter of Providence Journal Co.,* 820 F.2d 1342, 1346 (1st Cir.1986), *cert. dismissed,* 485 U.S. 693, 108 S.Ct. 1502, 99 L.Ed.2d 785 (1988).

■ Lastly, the bank says that, even if the attachment order were violated, the bank did not aid or abet the wrong. Here the bank not only fostered but appears to have orchestrated the violations. The district court found that the bank had worked "hand in glove" with Pascual, Gemco and Watch and Gem, "controll[ed] all flow of monies to and from those parties," and "determin[ed] the corporate strategy of those parties" in order "to avoid the scrutiny of the courts and maximize [the bank's] collections on its loans to [Gemco]." Royal Bank's brief in this court makes no serious effort to show that these finding were clearly erroneous.

2. The district court ruled that Seiko was damaged not only by the diversion of proceeds to the bank from the Plazas Las Americas sale but also by the diversion of about $50,000 from the same sale to Watch and Gem's landlord; by the later disbursements of about $250,000 to other Gemco and Watch and Gem creditors; and still later by the

bank's seizure of inventory from the Old San Juan store, frustrating a planned sale of that store to a third party for about $530,000. Implicit in this damage calculation is the view that each of these payments (or, in the last case, frustration of payment) was also a violation of the court's attachment order.

■ This is easy enough a conclusion as to the $52,000 paid to the landlord. This payment was part of a prearranged allocation of the proceeds of the sale; the bank, which took the lion's share for itself, was clearly involved in the allocation, and the allocation of the $52,000 violated the court's "henceforth remitted" directive for reasons already discussed in connection with the $797,000 payment. Having helped arrange these diversions, the bank is responsible for the full effect.

■ It less clear that the same view should be taken of the $250,000 in payments to third-party creditors of Gemco and Watch and Gem or the $530,000 loss that occurred when the bank frustrated the sale of the Old San Juan store. The former were apparently included on the theory that they represented funds belonging to Watch and Gem that, like the $850,000 in proceeds from the original sale, were diverted to creditors of Gemco and Watch and Gem instead of being paid into court. The $250,000 was a loan by the bank to Watch and Gem which, by prearrangement with the bank, was designed to pay off various Gemco creditors other than Seiko, thereby forestalling an involuntary bankruptcy petition.

If the $250,000 is treated as Watch and Gem's money, then the analysis is the same as with the $850,000. The bank might have argued that the $250,000 actually represented bank money to which Watch and Gem had no claim and that there is something odd about treating the bank's own decision to pay off Gemco creditors with the bank's own funds as depriving Seiko of Watch and Gem assets. Still, having structured the transaction as a loan to Watch and Gem—presumably to give the bank a claim for repayment—the bank may have thought it dangerous to describe the loan as a sham. Anyway, it does not try to distinguish the $250,000 payment.

As for the $530,000 loss, this was charged to the bank because it frustrated the sale of the Old San Juan store by seizing Watch and Gem assets, effectively violating the attachment order. Although it appears that the bank did cause the loss, it might have argued that the proposed sale was its own creation (it had proposed to finance the third-party buyer) and that, without its cooperation, there would have been no sale even without its seizure of the inventory. But again the bank makes no such argument, and instead implies (quite incorrectly) that the local court's alleged approval of the seizure trumped the district court's attachment order.

■ In all events, the bank has chosen to fight on a broader front—primarily by denying that anyone's action violated the attachment order or that it aided and abetted any such violation. Absent extraordinary circumstances, we confine ourselves in civil cases to the arguments made by the parties. *FDIC v. Fedders Air Conditioning, USA, Inc.*, 35 F.3d 18, 21 (1st Cir.1994). Whether or not the bank might have distinguished among the damage items and sought to limit its exposure, it has not done so here.

■ 3. Even though Royal Bank's conduct violated the attachment order and diverted or blocked the funds that would otherwise have been paid into court, Royal Bank is liable in a civil contempt proceeding only for actual damages. *In re Power Recovery Systems, Inc.*, 950 F.2d 798, 802 (1st Cir.1991). In this instance, the bank could arguably defeat the damage award—although not the finding of contempt—by showing that the money paid into court would ultimately have been awarded to the bank rather than Seiko.

Neither in the district court nor in this court has the bank ever made this argument in a straightforward fashion. Although there are a number of references to its priorities, these occur in the course of its various arguments that no contempt occurred. Perhaps as a result, the district court's brief discussion of priority issues is also directed not to damages but to contempt. For this purpose, the district court's discussion is strictly

speaking unnecessary, for reasons already given both by it and by us.

 An appellant waives arguments not made or only cursorily developed, *e.g., Grella v. Salem Five Cent Sav. Bank,* 42 F.3d 26, 36 (1st Cir.1994), and in this instance the bank can be reproached on both grounds: it makes *no* argument assuming contempt *arguendo* but challenging the computation of damages; and to the extent it discusses the priority issues, the discussion is episodic, incomplete and (in certain respects) quite unpersuasive.

Nevertheless, there are scattered fragments out of which one might well try to build a case that the 1981 factor's lien or the 1986 liens and assignments gave the bank a priority as to amounts owing to Gemco. The law in this area—both as to the Puerto Rico factor's lien statute and the assignment of accounts receivable statute—is at the same time both sparse (in explanatory case law) and complex (in statutory language). *See* 10 L.P.R.A. §§ 551 *et seq.* (Factor's Lien Act); 10 L.P.R.A. §§ 581 *et seq.* (Assignment of Accounts Receivable Act). The security transactions in this case are multiple, interrelated and in certain respects peculiar.

We have now spent an undue amount of time seeking a clear path through this morass in a futile effort to determine whether or not the bank possessed valid priorities that could be used to reduce or even eliminate the damage claims against it. Although we spare the reader a description of false starts and dead ends and remaining perplexities, the conclusion is clear: there is no way to answer the central question, short of a remand, extensive further briefing and probably further fact-finding.

Given the bank's effective waiver of the damages argument, no such remand can be justified. We cannot require the district court or Seiko to engage in further litigation based on a mere suspicion that the bank *might* have an argument for curtailing damages. It is ironic that, had the bank permitted the funds to be paid into court instead of diverting them to its own uses, the ensuing litigation would likely have focused on its priority rights rather than its contempt.

*Affirmed.*