**GOYA FOODS, INC., Plaintiff,**

v.

**Ulpiano UNANUE–CASAL, a/k/a Charles Unanue; Liliane Unanue; and Kalif Trading, Inc., Defendants.**

**Goya Foods Inc., Plaintiff,**

v.

**Wallack Management Co., Inc., 625 Park Corporation, and Ira Leon Rennert, Respondents.**

**Civ. No. 95–2411(JAF).**

United States District Court,
D. Puerto Rico.

May 4, 2001.

("Wallack Management"), and 625 Park Corporation, in civil contempt for violating this court's Orders which prohibited alienation of an apartment nominally owned by Liliane Unanue. *Docket Document No. 345.*

Arturo J. Garcia–Sola, McConnell Valdes, Salvador J. Antonetti–Stutts, Director, Department of Justice of PR, Federal Litigation Division, San Juan, PR, Ira Brad Matetsky, Legal Dept, Goya Foods Inc., Secaucus, NJ, for Goya Foods, Inc.

Ulpiano Unanue–Casal, New York City, defendant pro se.

Jan Alan Brody, Carelia, Byrne, Bain, Gilfillan, Roseland, NJ, for Liliane Unanue.

Liliane Unanue, New York City, pro se.

Kalif Trading, Inc., pro se, c/o Liliane Unanue, New York City, defendant, pro se.

Maria E. Pico, Bufete Pico, Miramar, PR, Wallack Management Co., Inc., pro se, Eva Coben–Talel, Regan A. Shulman, Beth Webber, Stroock & Stroock & Lavan LLP, New York City, for Wallack Management Co., Inc. and 625 Park Corporation.

Jose A. Axtmayer–Balzac, Axtmayer Carlo & Benitez, San Juan, PR, Yolanda Benitez–Sanchez, Axtmayer Carlos & Benitez, for Ira Leon–Rennert, respondent.

## OPINION AND ORDER

FUSTE, District Judge.

We are confronted with yet another chapter in the long-standing dispute between Plaintiff Goya Foods, Inc. ("Goya"), and Defendants Charles and Liliane Unanue. Plaintiff Goya seeks an order holding Respondents, Ira Leon Rennert ("Rennert"), Wallack Management Co., Inc.

## I.

### *Factual and Procedural Background*

We derive the following factual synopsis from our October 31, 1997 Opinion and Order, *Goya Foods, Inc. v. Unanue–Casal,* 982 F.Supp. 103 (D.P.R.1997), and the First Circuit's November 28, 2000 Opinion affirming our Judgment, *Goya Foods, Inc. v. Unanue–Casal,* 233 F.3d 38 (1st Cir. 2000).

Prudencio Unanue, the father of Defendant Charles Unanue, founded Goya in the 1930s. Charles Unanue served as a chief officer of Goya from the late 1940s until 1969. In 1969, prior to the death of his father, a dispute arose between Charles Unanue and his brothers, who were supported by their father, Prudencio Unanue. As a result of the conflict, Charles Unanue was removed from his position as an officer and director of Goya and its various affiliated companies. This event set the stage for a series of lawsuits amongst the siblings.

In 1972, the parties tried to settle their differences by reaching an agreement (1972 Agreement) under which Charles Unanue received certain payments in return for selling his shares in the Goya companies. A year later, Charles Unanue claimed that the other parties to the 1972 Agreement had breached it. In 1974, the parties amended the agreement (1974 Amendment). In addition to selling his ownership interest in all of the Goya companies, Charles Unanue agreed never to bring any claim or suit contesting or objecting to his father's will or trust, and not

to interfere with the disposition of assets of stock by his father, his estate, the beneficiaries, or his brothers. The 1974 Amendment also specified that any signatory to the amended stipulation who lost a suit with another signatory concerning Prudencio Unanue's will or trust had to pay the winner liquidated damages of double costs and attorneys' fees. By 1976, Goya had paid Charles Unanue more than $4.4 million for his share of the Goya corporations pursuant to the 1972 Agreement and the 1974 Amendment.

In 1987, eleven years after Prudencio Unanue's death, Charles Unanue demanded from his brothers his share of his parents' estate.[1] Joseph and Frank Unanue, as trustees of their father's trust, sued Charles Unanue in the Superior Court of New Jersey. They sought a declaratory judgment barring Charles Unanue from maintaining any claims against their father's estate and trust as agreed upon in the 1974 Amendment. In 1995, a New Jersey trial court entered judgment against Charles Unanue and his bankruptcy estate, *see infra*, and the court ordered Charles to pay liquidated damages totaling $6.9 million pursuant to the 1974 Amendment. *See In re Unanue*, No. M–128817, slip op. (N.J.Super.Ct.Ch.Div. Feb. 23, 1995). The New Jersey appellate court later affirmed the judgment. 311 N.J.Super. 589, 710 A.2d 1036 (App.Div.), cert. denied, 157 N.J. 541, 724 A.2d 801 (1998).

Meanwhile, Charles Unanue had filed for bankruptcy in Puerto Rico in 1990. Goya initiated adversary proceedings in the bankruptcy case, claiming that assets held in the names of Charles' wife, Liliane, and two companies, Emperor Equities, Inc., and Kalif Trading, Inc. ("Kalif Trading"), were actually owned by Charles.

Emperor Equities, Inc., is a Delaware corporation entirely owned by Liliane Unanue. Charles created Kalif Trading, a Panamanian corporation, in 1979. In 1995, the bankruptcy court dismissed Charles' case without awarding him a discharge. *In re Unanue–Casal*, No. 90–04490, slip op. at 5 (Bankr.D.P.R. Sept. 12, 1995).

In November 1995, Goya brought the present action in the United States District Court for the District of Puerto Rico against Charles Unanue, his wife Liliane Unanue, and Kalif Trading, to collect on the $6.9 million New Jersey judgment. Goya alleged that Charles Unanue was the beneficial owner of all property held in the names of Liliane and Kalif Trading.

On November 17, 1995, this court issued an Order prohibiting alienation of certain properties held by Defendants, including Apartment 10A at 625 Park Avenue in New York City. *See Docket Document No. 5.* On that same day, we issued another Order prohibiting alienation of the cooperative shares pertaining to the Park Avenue apartment. *Docket Document No. 9.* The cooperative apartment at 625 Park Avenue had been purchased in the name of Liliane Unanue in 1976. Charles and Liliane used the Park Avenue apartment as their New York residence from 1976 until 1998. *Docket Document No. 345.* Respondent 625 Park Corporation is the cooperative housing corporation that owns the 625 Park Avenue building, and Respondent Wallack Management is the managing agent for 625 Park Corporation. *Id.*

In a letter dated December 1, 1995, Goya informed Respondents 625 Park Corporation and Wallack Management that this court had "entered Orders prohibiting Liliane Unanue and others from transfer-

---

**1.** Charles Unanue claims that his share of the estate is currently worth approximately $450 million. *Docket Document No. 358.*

ring, alienating or encumbering certain properties held in the name of Liliane Unanue and others until the litigation is resolved." *Id.* at Exh. C. The letter further notified 625 Park Corporation that it should not allow any transfer of any ownership interest in Apartment 10A. *Id.* The information regarding the November 17, 1995 Orders was passed along to Respondent Rennert on December 11, 1995. *Id.* at Exh. D.

In July 1997, this court held a 10-day bench trial. On October 31, 1997, we issued an Opinion and order in which we found that Charles Unanue was the beneficial. owner of properties in Puerto Rico, New York, Spain, and France, that were held in the name of Liliane Unanue. *See Goya Foods, Inc. v. Unanue–Casal,* 982 F.Supp. 103, 109 (D.P.R.1997). We recognized Goya's right to execute judgment against several properties held in Liliane's name, including the Park Avenue apartment. *Id.* at 106, 112. This court stayed final execution of the judgment pending review by the First Circuit and the New Jersey appellate courts. *Id.* at 112.

In September 1997, Burton Wallack ("Wallack"), who is the president and co-owner of Respondent Wallack Management and a director and officer of Respondent 625 Park Corporation, wrote a letter to Liliane Unanue regarding a possible sale of Apartment 10A. *Docket Document No. 345, Exh. E.* Charles Unanue had apparently consented to sell the apartment, and Wallack agreed to serve as real estate broker for the sale in exchange for a 6% commission. *Id.*

Liliane Unanue responded to Wallack and informed him about the November 17, 1995 Orders. *Id.* at Exh. F. Liliane's letter, dated September 9, 1997, states the following:

> I will not be able to sell the apartment until I have authorization to do so from the U.S. District Court in Puerto Rico which has imposed an *ex parte* provisional attachment which was opposed, along with other matters, in a recent trial.
>
> . . . .
>
> ... [U]ntil I am in a position to do so, no commitment has been made to sell the apartment and it will not be shown until my right to sell it is unchallenged.

*Id.*

In February 1998, Wallack sent Liliane a letter of default regarding her failure to make required maintenance payments. *Id.* at Exh. I. Wallack informed Liliane that unless she cured her default of $24,802, the cooperative housing corporation would terminate her lease and take possession of Apartment 10A. *Id.* Liliane Unanue then filed an emergency motion requesting permission from this court to sell the Park Avenue apartment to pay the outstanding maintenance, taxes and upkeep on the apartment. *Docket Document No. 378, Exh. E.* We ordered counsel for Unanue and Goya to meet to discuss alternative solutions to the problem of Liliane's default. *Id.*

On February 28, 1998, Goya notified Wallack regarding this court's Opinion and Order dated October 31, 1997. *Docket Document No. 345, Exh. J.* The letter stated:

> In his decision, Judge Fusté held, among other things, that Charles Unanue rather than Liliane Unanue was the true beneficial owner of the Apartment. Accordingly, the court held that Goya is entitled to enforce its judgment by levying against "any residence registered to [Liliane Unanue's] name," which would include this Apartment.

*Id.* Goya asked to be notified about any potential action to be taken regarding the Unanues' interest in Apartment 10A, and

Goya included copies of our Opinion and Order as well as our Judgment in the correspondence. *Id.* Respondent Rennert also obtained copies of the same. *Docket Document No. 345.*

Meanwhile, the Unanues consulted their attorney, Jan Alan Brody, about the notice of default Wallack had sent to Liliane. *Id.* In Brody's March 13, 1998 written correspondence to Wallack, the attorney recognized that this court's November 17, 1995 Orders prohibited alienation of Apartment 10A: "Mrs. Unanue plans on selling her proprietary shares; however, there is presently a restraint against her alienation of such shares entered in a proceeding before the United States District Court for the District of Puerto Rico." *Id.* at Exh. K. Brody informed Wallack about the emergency motion filed by Liliane requesting an order granting her permission to sell the cooperative shares pertaining to the apartment, or directing that Goya pay the arrears and maintenance on the apartment while the restraint on alienation remained in effect. *Id.*

Wallack responded to Brody's letter on the same day, March 13, 1998. *Id.* at Exh. L. Wallack asked to be notified "of the Court's decision as outlined in your letter." *Id.*

On May 10, 1998, Liliane Unanue agreed to sell Apartment 10A to Respondent Rennert for $4.6 million. *See id.* at Exh. M. Prior to his acquisition of Apartment 10A at 625 Park Avenue, Rennert already owned the entire eleventh floor of the building and the only other apartment on the tenth floor. *Docket Document No. 345.* Rennert sought to expand his penthouse to encompass the entire tenth and eleventh floors of 625 Park Avenue. *Docket Document No. 372.*

Around May 22, 1998, Liliane Unanue retained attorney Samson Bechhofer of Herrick Feinstein L.L.P., to draw up a contract of sale. *Docket Document No. 345.* Counsel for Respondent Rennert, Fredric Altschuler of Cadwalader, Wickersham & Taft, sent copies of this court's Orders and Judgment to Bechhofer. *Id.* After reviewing the Orders and Judgment, Bechhofer determined that this court had prohibited the sale of Apartment 10A, and the proposed transfer to Rennert could not lawfully proceed. *Docket Document No. 378, Exh. H.* On June 3, 1998, Herrick Feinstein L.L.P. withdrew from representing Liliane because Bechhofer believed the sale of Apartment 10A would violate this court's Orders. *Id.* Goya contends that Bechhofer also informed Altschuler of his view. *Docket Document No. 345.* Liliane ultimately had to seek alternative representation for the transfer.

Prior to the closing, Rennert's attorneys prepared a title search, which disclosed that Goya had not recorded any cautionary notice or filed a Uniform Commercial Code (UCC) statement in New York state against the cooperative shares pertaining to Apartment 10A. *Docket Document No. 372, Exh. K.* Both the attorneys for Rennert and those for 625 Park Corporation independently concluded that this court's Orders prohibiting alienation of the apartment had lapsed at the entry of Judgment against the Unanues, and that there were no effective restraints prohibiting transfer of the property to Rennert. *Docket Document No. 372.*

Under the Bylaws and Proprietary Leases of 625 Park Corporation, the corporation's board of directors must approve any transfer of an apartment in the building. *Docket Document No. 345.* After consulting with counsel, 625 Park Corporation approved the sale of Apartment 10A to Rennert on the condition that Rennert indemnify 625 Park Corporation for any damages and litigation expenses that

might arise if Goya challenged the sale.[2] *Id.* at Exh. N. At the closing of the sale, Respondent Rennert executed the following letter of indemnification:

In consideration of the consent of 625 Park Corporation (the "Corporation") to the transfer of the Apartment to me, I hereby indemnify and hold harmless the Corporation, its officers, directors, shareholders and managing agent from and against any actions, claims, damages or costs (including reasonable attorney's fees and costs) incurred or suffered by such person as a result of any claim by Goya Foods, Inc. in the action entitled *Goya Foods, Inc. v. Ulpiano Unanue Casal u/k/a Charles Unanue, Liliane Unanue, and Kalif Trading, Inc.* with Index No. 95–2411 (U.S.Dist.Ct., P.R.) or any action or proceeding connected thereto.

*Id.* at Exh. R.

On June 19, 1998, Liliane Unanue sold the cooperative shares pertaining to Apartment 10A at 625 Park Avenue to Rennert and his wife, Ingeborg Rennert, for $4.6 million in cash. *Id.* at Exh. O. Wallack Management acted as Liliane's real estate broker and agent, and made the necessary arrangements for the closing. *Docket Document No. 378, Exh. G.* Upon Charles' instructions, Rennert wired $4.2 million of the purchase price directly into Liliane's account at Credit Suisse Bank in Lausanne, Switzerland. *Docket Document No. 345, Exh. P.* Liliane also received a check for $9,904.50. *Id.* at Exh. S. Wallack Management received a brokerage commission of $276,000, constituting 6% of the purchase price. *Id.* This $276,000 amount was included in the $4.6 million purchase price. Wallack Management also received a corporation transfer tax of $92,000, which constituted 2% of the purchase price and was paid in addition to the $4.6 million purchase price.[3] *Id.*

Following the closing, Charles and Liliane Unanue kept possession of Apartment 10A for a few months under an agreement with the Rennerts. *Docket Document No. 345.* After the Unanues left, the Rennerts undertook construction to expand their penthouse to include Apartment 10A. *Id.*

The contract of sale of the Park Avenue apartment included a confidentiality clause. *Id.* at Exh. O. Goya did not obtain evidence that the transfer had occurred until October 11, 2000. *Docket Document No. 345.*

On October 20, 2000, this court ordered Defendants Charles and Liliane Unanue to personally appear before the court and show cause why they should not be held in contempt for violating the November 17, 1995 Orders prohibiting alienation of the Park Avenue apartment. *Docket Document No. 331.* Charles and Liliane Unan-

2. A June 18, 1998 letter from attorney Richard Siegler of Stroock & Stroock & Lavan L.L.P. to 625 Park Corporation stated:

Provided that the Corporation receives the annexed indemnification letter executed by Mr. Rennert, the Corporation should transfer the shares and proprietary lease for the Apartment from Ms. Unanue to Mr. Rennert. As provided in the Board resolution adopted on June 11, 1998 conditionally approving the transfer of the Apartment as indicated above, this letter is intended to evidence the view of this firm that the Corporation is adequately protected from liability resulting from such transfer based upon the indemnification letter being provided to the Corporation by Mr. Rennert in the form attached. *Docket Document No. 345, Exh. N.*

3. Goya maintains that 625 Park Corporation, not Wallack Management, received the $92,000 transfer fee. *Docket Document No. 345.* However, the closing statement shows that Wallack Management received the corporation transfer tax, and Goya has submitted a photocopy of a $92,000 check drawn on Rennert's account made out to Wallack Management. *Id.* at Exh. S.

ue failed to appear at the show cause hearing held on October 31, 2000. *Docket Document No. 334.* We found Charles and Liliane in civil contempt, and this court issued warrants for their arrest. *Id.* On that same day, this court ordered execution of the judgment entered against Defendants on November 5, 1997. *Docket Document No. 336.* Charles and Liliane Unanue have failed to comply with numerous court orders and are currently living as fugitives in Europe. *Docket Document No. 378.*

■ On November 28, 2000, the United States Court of Appeals for the First Circuit affirmed our October 31, 1997 judgment. *Goya Foods, Inc. v. Unanue,* 233 F.3d 38, 48 (1st Cir.2000). Based on a constructive trust theory, the First Circuit affirmed our finding that the properties held in Liliane's name were actually owned by Charles. *Id.* at 45. Under the equitable theory of constructive trust, a third-party creditor is permitted to execute judgment on assets that are actually owned by the debtor but are held in another person's name. *Id.* The appellate court held that the constructive trust doctrine could be applied to real properties that had been identified in this litigation, including the Park Avenue apartment in New York City. *Id.* at 42 n. 3, 46.

On February 22, 2001, we granted Goya's motion for an Order directing Defendants to pay the proceeds from the sale of the Park Avenue apartment to Goya or into the registry of this court. *Docket Document No. 343.* Defendants failed to do so.

Goya filed a motion requesting that the court issue an Order for Respondents Rennert, Wallack Management, and 625 Park Corporation to show cause why they should not be held in contempt for participating in the alienation of the Park Avenue apartment in violation of our November 17, 1995 Orders. *Docket Document Nos. 344, 345.* On February 23, 2001, we granted Goya's request. *Docket Document No. 359.* Respondents filed briefs in opposition to Goya's motion to hold them in contempt, *Docket Document Nos. 372, 373,* and Goya filed a reply, *Docket Document No. 378.* Respondents filed a sur-reply, *Docket Document Nos. 384, 385.* We held a show cause hearing on April 3, 2001.

## II.

### *Analysis*

Goya moves for an adjudication of civil contempt against Respondents Rennert, Wallack Management, and 625 Park Corporation. *Docket Document No. 345.* Goya seeks compensatory damages of $4,600,000, plus interest, costs, and attorneys' fees. *Id.* Goya also requests that this court order Respondents to transfer to Goya sums by which Respondents have been unjustly enriched by their contumacious acts, including the $92,000 transfer fee, and any profit that Rennert may receive from a subsequent resale of Apartment 10A. *Id.*

### A.

■ Courts enjoy a broad inherent contempt power to ensure compliance with court orders and judgments. *See Int'l Union, United Mine Workers v. Bagwell,* 512 U.S. 821, 831, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994).

> The traditional justification for the relative breadth of the contempt power has been necessity: Courts independently must be vested with "power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates...." Courts thus have embraced an inherent contempt authority ... as a power "necessary to the exercise of all others."

*Id.* (internal citations omitted). "Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. United Mine Workers*, 330 U.S. 258, 303, 67 S.Ct. 677, 91 L.Ed. 884 (1947). Civil contempt will lie only if the complainant can establish by clear and convincing evidence that a contemnor violated a court order. *See Gemco Latinoamerica, Inc., v. Seiko Time Corp.*, 61 F.3d 94, 98 (1st Cir.1995). The underlying order must be clear and unambiguous in its terms. *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 15 (1st Cir.1991). Courts may hold nonparties in contempt if the nonparty is "legally identified with that defendant, or, at least, deemed to have aided and abetted that defendant in the enjoined conduct." *Microsystems Software, Inc., v. Scandinavia Online AB*, 226 F.3d 35, 43 (1st Cir.2000).

Goya argues that Respondents Rennert, Wallack Management, and 625 Park Corporation are all liable for contempt for knowingly participating in the alienation of

Apartment 10A in violation of court orders. *Docket Document No. 345.*

**B.**

On November 17, 1995, this court issued an Order Prohibiting Alienation of Properties of Defendants. *Docket Document No. 5.* The Order stipulated:

Plaintiff, having moved the Court for provisional remedies to secure satisfaction of judgment pursuant to Articles 112 and 113 of the Mortgage Law of 1979, 30 L.P.R.A. § 2401 and 2404, Rule 64 of the Federal Rules of Civil Procedure[4] and Rule 56 of the Puerto Rico Rules of Civil Procedure[5], the Court, having found that provisional remedies are necessary to secure enforcement of any judgment which may be rendered against defendants in this case, it is hereby

ORDERED that defendants their agents, employees, and all persons holding property for them or acting in concert with them, are prohibited from alienating or in any way assigning, transferring, selling or otherwise disposing or encumbering any of the real prop-

---

4. Rule 64 of the Federal Rules of Civil Procedure provides:

At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought.... The remedies thus available include arrest, attachment, garnishment, replevin, sequestration, and other corresponding or equivalent remedies, however designated and regardless of whether by state procedure the remedy is ancillary to an action or must be obtained by an independent action.

FED.R.CIV.P. 64.

5. Rule 56.1 of the Puerto Rico Rules of Civil Procedure reads:

In every action, before or after entering judgment, and on motion of claimant, the court may issue any provisional order it may deem necessary to secure satisfaction of the judgment. The court may order the attachment, garnishment, the prohibition to alienate, claim and delivery of personal property, receivership, an order to do or to desist from doing any specific act, or it may order any other measure it deems necessary, according to the circumstances of the case. In every case in which a provisional remedy is sought, the court shall consider the interests of all the parties and shall adjudicate as substantial justice may require.

32 L.P.R.A. app. III. R. 56.

erties, including cooperative shares, listed below:

. . . .

2. Apartment 10A at 625 Park Avenue, New York, New York, cooperative shares pertaining to which are held in the name of Liliane Unanue.

. . . .

This order is granted *ex parte*, the Court having found that exigent circumstances exist, as amply shown in plaintiff's moving papers and, in particular, the documentary evidence submitted therewith, including the transcripts of Bankruptcy Rule 2004 examinations where certain of the defendants refused to answer questions regarding the origin, ownership and transfer of assets.

*Docket Document No. 5.*

That same day, this court issued a parallel Order specifically prohibiting alienation of the cooperative shares pertaining to the Park Avenue Apartment. *Docket Document No. 9.* That Order provided, in part:

[I]t is hereby ORDERED that defendant Liliane Unanue, her agents, employees, and all persons holding property for her or acting in concert with her, are prohibited from alienating or in any way assigning, transferring, selling or otherwise disposing or encumbering any of the cooperative shares pertaining to Apartment 10A at 625 Park Avenue, New York, New York, or her ownership interest in the premises represented by those shares.

*Id.*

Goya avers that since Respondent Wallack Management served as Liliane's real estate broker and was her agent, Respondent Wallack Management is directly bound by the November 17, 1995 Orders. *Docket Document No. 345.* In addition to acting as Liliane's agent, Wallack Management arranged the closing of the sale in its capacity as management company for 625 Park Corporation. *Id.* Thus, Goya argues that Wallack Management violated this court's Orders and should be held in contempt. *Id.*

Goya contends that Respondent 625 Park Corporation should be held in contempt for knowingly acting in concert with the Unanues to violate this court's Orders prohibiting alienation of the Park Avenue apartment. *Id.* Goya stresses that 625 Park Corporation approved the transfer of Apartment 10A to Rennert, and the corporation instructed its managing agent, Wallack Management, to consummate the sale. *Id.*

Goya submits that Respondent Rennert should be held in contempt for purchasing Apartment 10A. *Id.* As the buyer, Goya posits that Rennert was an indispensable party to the transaction that was expressly prohibited by this court's Orders. *Id.*

Respondents concede that they had knowledge of the November 17, 1995 Orders before the sale of Apartment 10A. *Docket Document No. 383.* Respondents also had timely notice of our October 31, 1997 Opinion and Order holding that Charles Unanue, not Liliane, was the beneficial owner of Apartment 10A, as well as timely notice of the Judgment entered in favor of Goya.[6] Respondents maintain that

---

6. Although Respondents do not expressly concede this point, Goya notified Wallack Management about our Opinion and Order in February 1998. *Docket Document No. 345, Exh. J.* We impute knowledge to the other Respondents based on the legal opinions given by counsel for Rennert and 625 Park Corporation to their clients that the transfer of Apartment 10A was lawful because the November 17, 1995 Orders had lapsed upon entry of Judgment in favor of Goya on November 5, 1997. *See Docket Document No. 372.* ("[Respondents] proceeded with the transaction only after [Rennert's] attorneys

they did not violate any order of this court, and therefore should not be held in contempt. *Docket Document No. 372.* Respondents argue that Goya cannot establish by clear and convincing evidence that the order was clear and unambiguous, that they violated any order, that they acted in bad faith, and that Goya is entitled to any damages. *Id.* Respondents Wallack Management and 625 Park Corporation also argue that their fiduciary duties to Rennert compelled 625 Park Corporation to consent to the transfer of Apartment 10A. *Docket Document No. 383.*

## C.

Respondents aver that the November 17, 1995 Orders were not in effect in June 1998, when the sale of Apartment 10A occurred, because Goya did not perfect the Orders pursuant to Rule 56.4 of the Puerto Rico Rules of Civil Procedure.[7] *Id.* Respondents argue that since Goya did not perfect the Orders, the Orders lapsed upon entry of judgment on November 5, 1997. *Id.* Respondents also point out that Goya did not take any alternative steps pursuant to the UCC to perfect a lien in securities. *Id.* Respondents claim that provisional relief issued pursuant to Rule 56 survives a final judgment only if the attachment has been perfected. *Id.*

Goya maintains that it did not levy on Apartment 10A and the Unanues' other U.S. assets immediately after Judgment was entered on November 5, 1997, because

this court stayed enforcement of the judgment pending appellate review. *Docket Document No. 378.* Moreover, Goya argues that even if the judgment had not been stayed, it could not record a cautionary notice in the Registry of Property of Puerto Rico to memorialize the entry of this court's Orders restraining the alienation of a property located in New York City. *Id.* In addition, Goya posits that it could not record a notice of pendency against the Park Avenue apartment in the registry of property of New York, because Liliane Unanue held title to Apartment 10A in the form of cooperative shares pertaining to the apartment. *Id.* Goya contends that since the 625 Park Avenue building is owned as a cooperative, under New York law, it could not record a notice of pendency against Apartment 10A. *Id.* Goya also avers that it could not make a filing pursuant to UCC Article 9 of a nonconsensual judicial order. *Id.*

Although Goya did not seize the stock certificate pertaining to the cooperative shares from Liliane Unanue, Goya argues that the purpose of such a seizure would be to protect innocent third parties. *Docket Document No. 383.* Goya maintains that this purpose was served by giving notice of the Orders prohibiting alienation to Respondents. *Id.* Goya's position is that "the methodology of enforcing prohibitions to alienate through the vehicle of recording or seizure is designed to provide additional protection to the plaintiff beyond that pro-

and the attorneys for 625 Park Corporation independently came to the conclusion that there was no restraint against the Cooperative Shares and that Goya had failed to take any steps to block the transfer of the Cooperative Shares upon the entry of a judgment in the action against the Unanues.")

7. The rule reads:
 If the requirements of Rule 56.3 have been met, the court shall issue, on motion ex parte of a claimant, an order of attachment

or of prohibition to alienate. The attachment and prohibition to alienate real property shall be effected by recording them with the Registry of Property and notifying the defendant. In case of personal property, the order shall be carried out by depositing the personal property in question in court or with the person designated by it under the claimant's responsibility....

 32 L.P.R.A. app. III. R. 56.4.

vided by the order itself—not to represent a procedural hurdle voiding the restraint if it cannot readily be complied with."

*Docket Document No. 378.*

■ A provisional order prohibiting alienation of a property may remain in effect after entry of judgment in favor of the party to be protected by the provisional remedy, in this case, Goya. This court issued the Orders prohibiting alienation to protect Goya's interest and "to secure satisfaction of the judgment." *See* P.R.R.Civ.P. 56.1. These Orders were issued ex parte following a preliminary assessment of the evidence presented by Goya. After a full trial in which both Unanues received the opportunity to testify and present their case, we entered Judgment in favor of Goya on November 5, 1997. Our Orders remained effective after entry of judgment even though Goya did not record them with the Registry of Property or deposit the cooperative shares with the court or a designated receiver.

■ We hold that where a nonparty has actual knowledge of an order prohibiting alienation of a certain property, the nonparty may be held in civil contempt for violating the order even if there has not been recordation (in the case of real property) or seizure (in the case of personal property).[8] Respondents cannot argue that they participated in the transfer of Apartment 10A to a bona fide purchaser who had no knowledge of the Orders and Judgment issued by this court.

Our holding that the Orders prohibiting alienation were in effect in June 1998 is consistent with the expansive power courts enjoy to design provisional remedies to effectuate judgments.

Rule 56 of the Rules of Civil Procedure confers upon the court sufficient flexibility to issue the measures which it deems necessary or convenient, according to the circumstances of the case, to secure the effectiveness of the judgments. Its only limitation is that the measure be

---

8. The November 17, 1995 Orders issued by this court were titled "Order Prohibiting Alienation of Properties of Defendants" and "Order Prohibiting Alienation of Cooperative Shares," respectively. *Docket Document Nos. 5, 9.* These Orders were obviously orders prohibiting alienation of property, not orders of attachment.

Rule 56.1 lists "attachment" and "prohibition to alienate" as separate provisional remedies that may be used to protect a future judgment. P.R.R.Civ.P. 56.1. An "attachment" is defined as "[t]he seizing of a person's property to secure a judgment or to be sold in satisfaction of a judgment." BLACK's LAW DICTIONARY 123 (7th ed.1999). An order prohibiting alienation of property bars the owner from selling the property to another. Under Puerto Rico law, an attachment is directed to the U.S. Marshal, not to the defendants. *Quiros–Lopez v. Unanue–Casal (In re Unanue Casal),* 998 F.2d 28, 32 (1st Cir.1993). Here, the November 17, 1995 Orders prohibiting alienation were directed at the Unanues and those acting in concert with them, not the U.S. Marshal.

Respondents cite *Quadrel Leasing De P.R., Inc. v. Carlos A. Rivera, Inc. (In re Carlos A. Rivera, Inc.),* 130 B.R. 377 (Bankr.D.P.R. 1991), *FDIC v. Debtor (In re Moscoso Villaronga),* 111 B.R. 13 (Bankr.D.P.R.1989), and *Perez Guerra v. Matos Bernier,* 48 P.R. Offic. Trans. 582 (1935), for the proposition that provisional relief issued pursuant to Rule 56 survives a final judgment only if the attachment has been perfected. Respondents' reliance on these cases is unavailing, since those cases related to attachments of property, not orders prohibiting alienation. *In re Rivera,* 130 B.R. at 378, *In re Moscoso Villaronga,* 111 B.R. at 14, *Perez Guerra,* 48 P.R. Offic. Trans. at 582. We note that *In re Moscoso Villaronga* related to an "Order of Attachment, Garnishment and Seizure, and Prohibition to Alienate" issued by this court. 111 B.R. at 15. Since the opinion only discussed the attachment, not the prohibition to alienate portion of the order, we find that the case is not persuasive. *Id.* at 15–17.

reasonable and adequate to the essential purpose of the same, which is to guarantee the effectiveness of the judgment which in due time may be rendered. *This flexibility, so necessary for the administration of justice, is the greatest virtue of Rule 56, virtue which we should promote and preserve instead of mystifying it with technical concepts and requirements.*

HMG *Prop. Investors, Inc. v. Parque Indus. Rio Canas, Inc.,* 847 F.2d 908, 914 (1st Cir.1988) (emphasis added) (citing *F.D. Rich Co. v. Superior Court,* 99 P.R.R. 155, 173 (1970)).

An examination of the factual background of this case reveals that both the Unanues and Respondents understood that the Orders prohibiting alienation remained in effect after entry of judgment.

In February 1998, following entry of judgment in favor of Goya in November 1997, Liliane Unanue filed an emergency motion with this court seeking permission to sell the Park Avenue apartment. *Docket Document No. 378, Exh. E.* Liliane was concerned about the notice of default Wallack had sent to her regarding her unpaid arrears. We responded to Liliane's emergency motion by ordering the attorneys on both sides to discuss alternative solutions to prevent repossession of Apartment 10A by 625 Park Corporation. *Id.*

In March 1998, Jan Alan Brody, counsel for the Unanues, drafted a letter to Wallack, stating that there was presently a restraint prohibiting Liliane from transferring her cooperative shares. *Docket Document No. 345, Exh. K.* Brody informed Wallack about the emergency motion filed by Liliane for permission to sell her apartment. *Id.* Wallack immediately responded to Brody's letter, requesting notification of this court's decision on Liliane's emergency motion. *Id.* at Exh. L.

The February 1998 motion and Brody's March 1998 correspondence with Wallack show that Liliane understood that the Orders prohibiting alienation were in effect at that time, even though judgment had been entered in favor of Goya the previous year. Wallack's March 1998 letter indicates that he believed there was an operative restraint prohibiting Liliane from selling Apartment 10A, and that it was necessary for the court to grant Liliane's emergency motion for her to lawfully sell the residence.

Moreover, Respondent 625 Park Corporation only approved the transfer of Apartment 10A after obtaining a letter of indemnification from Rennert. *Docket Document No. 345, Exh. N.* Rennert indemnified 625 Park Corporation and Wallack Management from damages, attorneys' fees, and costs that might be incurred if Goya challenged the sale. *Id.* at Exh. R. The letter of indemnification specifically listed the caption and case number of the present case. *Id.* The indemnification letter constitutes compelling evidence that Respondents were aware of the possible illegality of the sale and their intent to allocate that risk among themselves.

Furthermore, Liliane Unanue was unusually insistent that the transfer of the Park Avenue apartment remain a secret. Liliane's sale of the apartment was contingent upon there being complete secrecy surrounding the transfer. *Docket Document No. 345, Exh. M.* The contract of sale included a confidentiality clause barring the parties from disclosing the transaction to any third person other than the party's own attorney. *Id.* at Exh. O. The parties involved with the sale of Apartment 10A were so successful at keeping the transfer a secret that Goya did not obtain evidence that the transfer had oc-

curred until October 11, 2000. *Docket Document No. 345.*

Respondents cite *Stargus Props. v. Superior Court,* 101 P.R.Offic.Trans. 139 (1973), as a case in which the court found that a defendant was not in contempt despite its violation of an order prohibiting alienation, because the order had not been perfected in accordance with Rule 56.4. *Docket Document No. 372.* In *Stargus,* the trial court had issued an order on May 24, 1971, prohibiting alienation of real properties which were the subject of a contract dispute.[9] *Id.* at 143. Subsequently, the real properties were sold by defendants to third persons. *Id.* The trial court found defendants to be in civil and criminal contempt. *Id.* at 143–44.

The Supreme Court of Puerto Rico determined that the May 24, 1971 order was void because the order was seriously deficient in multiple respects. *Id.* at 146. First, Rule 56.1. states that the court may issue provisional remedies "on motion of claimant." P.R.R.Civ.P. 56.1. In *Stargus,* the trial court issued the order sua sponte, without being prompted to do so by the interested party. *Id.* at 147. Second, the record did not show that the interested parties had recorded the prohibition to alienate in the Registry of Property and notified the defendant pursuant to Rule 56.4. *Id.* at 147. Third, the bond that had been given as required by the order was defective. *Id.* The bond had not been sworn to and signed by the surety, and it was not accompanied with an affidavit showing that the surety owned properties worth twice the amount of the bond. *Id.* Fourth, the order was tenebrous in that it did not refer to any specific real properties that were to be subject to the order. *Id.* For these reasons, the Puerto Rico Su-

preme Court set aside the trial court's finding that defendants were in contempt for violating the May 24, 1971 order. *Id.* at 148.

*Stargus* can easily be distinguished from the instant case. The Supreme Court of Puerto Rico invalidated the order of prohibition of alienation in *Stargus* because the order was plagued with multiple deficiencies. Three of the four problems cited by the Puerto Rico Supreme Court in *Stargus* are not present here. We issued the November 17, 1995 Orders in response to an urgent motion by Goya for ex parte provisional remedies to secure satisfaction of judgment. *See Docket Document No. 2.* Respondents do not contend that there were any defects with the bonds filed by Goya in accordance with the Orders. The Orders clearly identified each and every property that was subject to the prohibition of alienation.

The only defect in this case was that Goya did not record the prohibition to alienate with the Registry of Property or deposit the cooperative shares pertaining to Apartment 10A with the court or a designated receiver. We doubt whether the Puerto Rico Supreme Court in *Stargus* would have invalidated an order of prohibition of alienation that had been afflicted with one minor deficiency, instead of four separate defects. Recordation and seizure measures are designed to notify the defendant(s) and third parties about the order prohibiting alienation. Even though Goya did not formally record the Orders prohibiting alienation with the Registry of Property or deposit the cooperative shares, Respondents had knowledge of the Orders as well as of the Judgment in favor of Goya. *Docket Document No. 383.* In contrast,

---

9. The order stated: "By virtue of Rule No. 56 of the Rules of Civil Procedure in force, this Court orders the prohibition to dispose of, or of any condemnation proceeding over the property object of this litigation." *Id.* at 143.

there is no indication in *Stargus* that the defendants had notice of the order prohibiting alienation prior to the sale of the real properties. Thus, the instant case differs substantially from the situation presented to the Puerto Rico Supreme Court in *Stargus*, and we need not follow its result.

### D.

■ Respondents aver that they should not be held in contempt because the November 17, 1995 Orders were not clearly and unambiguously in effect in June 1998. *Docket Document No. 372*. Respondents submit that there was ambiguity as to the continued duration and effect of the Orders, thus entitling Respondents to conclude that the Orders had lapsed upon entry of the Judgment. *Id.*

Respondents' contention is meritless. The language of the November 17, 1995 Orders is pellucid. The Orders are directed at Defendants Charles and Liliane Unanue, Charles' alter ego Kalif Trading, and "their agents, employees, and all persons holding property for them or acting in concert with them." *Docket Document Nos. 5, 9*. The Orders prohibited these persons from alienating any of the listed properties, including Apartment 10A at 625 Park Avenue. *Id.* There was no language in the Orders indicating that they would lapse upon entry of a judgment in favor of Goya.

If Respondents had desired clarification from this court about the effectiveness of the Orders so as to avoid being held in contempt, they could have asked this court for guidance about the lawfulness of alienating Apartment 10A prior to closing the sale. *See Star Fin. Servs. v. Aastar Mortgage Corp.*, 89 F.3d 5, 13 (1st Cir.1996) ("[T]he wording of the order was clear and unambiguous and ... if there were any doubts, clarification or modification from the court should have been sought."); *In-*

*fusaid Corp. v. Intermedics Infusaid, Inc.*, 756 F.2d 1, 2 (1st Cir.1985) ("[W]hen in doubt about the lawfulness of a proposed course of action, [a party or nonparty] can ask the district court for guidance."). Respondents failed to do so.

### E.

■ Respondents argue that they did not aid and abet the Unanues in committing contemptuous conduct. *Docket Document No. 372*. Respondents contend that they cannot be found to be aiders and abettors in contempt of this court's Orders because they lacked the requisite state of mind: they did not believe that the sale of Apartment 10A violated any court order. *Id.* Respondents underscore that the transfer of the Park Avenue apartment only took place after counsel for Rennert and for 625 Park Corporation had independently concluded that there was no effective restraint prohibiting alienation of the cooperative shares. *Id.*

■ Since Respondents are nonparties, this court may hold them in contempt only if we find that they are legally identified with the Unanues or that they aided and abetted the Unanues in committing the prohibited conduct. *Microsystems Software*, 226 F.3d at 43. The alleged good faith of Respondents does not prevent this court from finding that they aided and abetted in the Unanues' flouting of the November 20, 1995 Orders. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949) ("An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently."); *Star Fin. Servs., Inc. v. Aastar Mortgage Corp.*, 89 F.3d 5, 13 (1st Cir. 1996) (finding that good faith does not excuse civil contempt).

All of the Respondents acted as necessary parties in the violation of this court's Orders. As the buyer, Rennert paid the $4.6 million for Apartment 10A and then indemnified 625 Park Corporation for any damages or litigation expenses arising from the disputed transfer. As a result, Rennert was able to expand his penthouse apartment to include all of the tenth and eleventh floors of 625 Park Avenue. 625 Park Corporation gave the necessary approval for the sale, and directed its management company, Wallack Management, to arrange the sale. Both 625 Park Corporation and Wallack Management gained financial rewards as a result of the transfer. We find that Respondents clearly aided and abetted the Unanues in violating this court's Orders prohibiting alienation of the Park Avenue apartment.

### F.

 Respondents 625 Park Corporation and Wallack Management further argue that the cooperative housing corporation had a fiduciary duty to treat all its shareholders, including Rennert, fairly. *Docket Document No. 373.* 625 Park Corporation has always given its consent whenever a shareholder in good standing has sought to buy an additional apartment in the building to enlarge the shareholder's residence. *Id.* Rennert is a shareholder in good standing. *Id.* According to Respondents 625 Park Corporation and Wallack Management, if the cooperative housing corporation had not approved of Rennert's proposed purchase of Apartment 10A, it would have exposed itself to liability for breach of its fiduciary duty to its shareholders. *Id.* Furthermore, Respondent 625 Park Corporation argues that "it wasn't just that the corporation could proceed with the transaction, it really had to proceed with the transaction. Because, as a fiduciary, it really wasn't a matter of choice; it was a matter of responsibility to

the shareholder." *Docket Document No. 383.* Respondents 625 Park Corporation and Wallack Management submit that 625 Park Corporation consented to the transfer of Apartment 10A in the good faith exercise of its fiduciary duty to Rennert. *Docket Document No. 373.*

We reject Respondents' audacious and absurd contention that 625 Park Corporation's fiduciary duties to Rennert required its violation of our unambiguous Orders prohibiting a sale of Apartment 10A. It is plain that a corporation may not commit an act prohibited by law and then justify its unlawful behavior by citing its fiduciary duties to one of its shareholders.

### G.

Respondents argue that Goya has not established that it is entitled to any damages or attorneys' fees. *Docket Document No. 372.* Respondents maintain that Goya has not shown that the sale of Apartment 10A caused it to suffer any damages. *Id.*

 One of the purposes of civil contempt proceedings is to compensate the complainant for losses suffered. *G. & C. Merriam Co. v. Webster Dictionary Co.,* 639 F.2d 29, 40 (1st Cir.1980).

 Here, Goya won a $6.9 million judgment against Charles Unanue in a New Jersey trial court in February 1995. Including interest, that judgment is now worth approximately $8.5 million. *Docket Document No. 378.* Charles Unanue deliberately hid his assets under the names of his wife and other entities, and to date, no part of the judgment has been paid to Goya. *Docket Document No. 345.* Goya is in the process of levying against an apartment held by one of Charles Unanues' alter egos in San Juan, Puerto Rico, but the value of the apartment falls well below the value of the judgment obtained against Charles Unanue. *Id.* The Park Avenue apartment is the most valuable asset that

can be used to satisfy judgment against Charles. *Docket Document No. 378, Exh. E.*

Goya has been damaged by Respondents' contemptuous conduct to the full extent of the purchase price paid by Rennert. If Respondents had complied with the Orders, they could have undertaken the same transfer at a later date with the court's permission, so long as Goya received the proceeds of the sale. Since Respondents aided and abetted the Unanues in the transfer of Apartment 10A at 625 Park Avenue in violation of this court's Orders, we hereby **ORDER** that Respondents pay into the registry of this court for the benefit of Goya the $4.6 million purchase price of the apartment, plus interest, costs, and attorneys' fees. The obligation to pay is joint and several among Wallack Management, 625 Park Corporation, and Ira Rennert. The $4.6 million deposit shall be made on or before May 11, 2001. Movants shall file their bill of costs and a verified accounting of attorneys' fees by May 11. Thereafter, the court will promptly address those pending items and direct Respondents to deposit additional moneys to comply with this court's Order. Failure to pay will result in the immediate issuance of a federal warrant for the arrest of Ira Rennert until payment is made.

## III.

### *Conclusion*

In accordance with the foregoing, we hereby **HOLD** Respondents Rennert, Wallack Management, and 625 Park Corporation in **CIVIL CONTEMPT** for violating this court's November 17, 1995 Orders prohibiting alienation of Apartment 10A at 625 Park Avenue in New York City.

**IT IS SO ORDERED.**